**NORTH AMERICAN AVIATION INC., Plaintiff-Appellee, v. UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL UNION 927, U. A. W., C. I. O. et, Defendants-Appellants.**

Ohio Appeals, Second District, Franklin County.

No. 5053.   Decided April 12, 1954.

Porter, Stanley, Treffinger & Platt, R. H. Treffinger, Bruce G. Lynn, of Counsel, Columbus, for plaintiff-appellee.

Harold Cranefield, Lowell Goerlich, Toledo, David Clayman, Columbus, for defendants-appellants.

(FESS, CONN & DEEDS, JJ, of the Sixth Appellate District sitting by designation.)

244

## OPINION

By CONN, J.

This action was begun in the Common Pleas Court by plaintiff, October 23, 1953, against the defendants for injunctive relief. In addition to the two labor unions named in the caption as defendants, the Regional Director and two representatives of the UAW-CIO, individually and in their representative capacity, were made defendants; also the president, vice-president, secretary and treasurer, three trustees, eleven committeemen and stewards, sergeant-at-arms and guide of Local No. 927 UAW-CIO, were made defendants individually and in their representative capacity; and also eighty-three other employes of plaintiff designated as stewards were made parties defendant and sued individually, there being in all 107 defendants, together with all other members of said local, too numerous to be named, were also made parties defendant as a class.

Plaintiff alleges that its office, plant and place of business in Ohio is located at 4300 Fifth Avenue, Columbus, Ohio; that the plant site consists of approximately 250 acres; that the combined floor space is approximately 3,000,000 square feet; that the plant is engaged in the assembly and manufacture of naval aircraft for the United States Navy and military aircraft for the United States Air Force and Marine Corps; that plaintiff employs approximately 18,000 employes; that said local No. 927 is the duly certified and recognized bargaining agency of approximately 12,500 of plaintiff's employes.

Plaintiff further avers that plaintiff and defendant labor unions were unable to agree upon a new contract after 30 days negotiations; that said labor organizations, acting by and through the individual defendants herein, authorized and commenced a strike against plaintiff at midnight October 22, 1953; that defendants, individually and acting in concert, picketed plaintiff's plant in an unlawful manner and by unlawful means as more particularly set forth in plaintiff's petition; that plaintiff was prevented from conducting its normal business operations and that as a result, the defense efforts of the United States were crippled and imperiled.

Plaintiff prayed that a restraining order against defendants issue forthwith, and without notice, and upon final hearing the order be made permanent.

A restraining order was issued by the trial court on October 23, 1953, ex parte, on plaintiff's application. The order, among other things, limited the number of pickets to four at each of the motor driveway entrances to the plant from Fifth Avenue and Fourteenth Avenue, and two pickets at each gateway, or other entrance to the plant from Fifth Avenue.

The order contained, in all, eleven separate specific acts, including hindering or intimidating in any manner plaintiff's officers, agents, employes, representatives or other persons having business with plaintiff; also from interfering by violence, force, intimidation those desiring to enter or leave the plant or blocking or obstructing any of the driveways or interfering with or hindering ingress to or egress from said plant and also from loitering, grouping or congregating at or near any approaches or on public streets or highways leading to said plant.

Copies of the restraining order were served on each of the named defendants, except six who could not be found.

October 24, 1953, the defendants moved the court to vacate and set aside the temporary restraining order, which was heard on evidence and statements of counsel, and at the conclusion thereof was overruled. November 6, 1953, plaintiff filed an application for an order containing three specifications, to wit: (a) and (b) reducing number of pickets respectively at 14th Avenue and 5th Avenue entrances to plaintiff's plant, and (c) for an order to require certain defendants named therein to show cause why they should not be punished in contempt of court for violation of the temporary restraining order during the period from October 27th to November 5th, 1953.

Hearing on the above application was had on November 12, 1953. At the conclusion thereof, the court granted the application and ordered the defendants named therein to show cause on Tuesday, November 17, 1953, why the court should not enter a finding that the temporary restraining order had been violated and that by reason thereof that said defendants be found to be in contempt of court.

Upon the opening of court on November 17, 1953, counsel for plaintiff called the court's attention to certain purported violations of the temporary restraining order that had occurred earlier in the morning of November 17th, and thereupon, and before proceeding with the evidence to show cause in respect to occurrences on November 4th and 5th, plaintiff moved that all pickets be removed from all gates and entrances and that defendants post a bond to maintain the peace.

Written charges in contempt were filed on November 18, 1953, at 10:50 a. m., wherein it was alleged

"that on the morning of November 17, 1953, between 6:45 and 8:30 a. m., the defendants violated, disregarded and disobeyed the temporary restraining order entered in this cause under date of October 23, 1953."

The defendants were ordered to appear on November 18, 1953, and, at the conclusion of other matters under plaintiff's motion of November 6, 1953, show cause why they should not be punished as for contempt.

At the conclusion of the hearing of charges previously filed, the court sustained plaintiff's motion and found that the defendants and each of them, on November 4th and 5th, had violated the temporary restraining order issued October 23, 1953, and were in contempt of court, and each defendant was fined $200.00, or an amount in the aggregate of $20,000.00. The court ordered the fine suspended on condition that defendants obey said order.

The hearing on charges filed on November 18th, was continued to November 19, 1953, at 11:00 o'clock a. m., and the Clerk was ordered to cause notice of this order to be issued to the Sheriff, and service forthwith upon said defendants. The judgment entry recites that defendants were before the court by "general appearance." However, it does not appear that any objection was interposed on this ground.

At the conclusion of an extended hearing on said written charges, the court on November 27, 1953, found each defendant guilty of the contempt charged, and fined each defendant $500.00, or in the alternative fined the defendants collectively $50,000.00. It was further ordered that $25,000.00 of said fine be suspended on condition that within the time stipulated, defendants satisfy claims for damages sustained by employes growing out of strike activities. On the same day, the court granted the motion of defendants to set aside the order and judgment entered as of November 17, 1953.

From said judgment, defendants have appealed to this court on questions of law.

Defendants' assignment of errors contains eighteen specifications, but in brief and oral argument the several assignments herein have been combined in substantially the form set forth in defendants' brief, but not in the same order, as follows:

1. The contempt proceedings were unlawful in that no written charges were filed as required by statute.

2. The court erred in admitting in evidence motion picture films and affidavits.

3. The court's remarks, attitude and order imposing an unreasonable fine, clearly establishes that the court in finding

the defendants guilty was impelled by bias, prejudice, passion and a misconception of the duties of the court of equity; that the trial court exceeded its lawful functions and erred in depriving defendants of their constitutional rights.

4. The plaintiffs failed to establish by the required degree of proof (a) that any of the defendants were guilty of the alleged charges and that (b) the Union was criminally responsible for the alleged violation of the order.

1. Taking up the several assignments of error in above order, we first consider defendants' claim that as no written charges were filed, as required by statute, the contempt proceedings were unlawful.

Acts in contempt are enumerated in §2705.02 **R. C.**, and include disobedience to "a lawful writ, process, order, rule, judgment or command of a court * * *."

The following §2705.03 **R. C.**, expressly provides that "a charge in writing shall be filed with the Clerk of the court * * *."

The provisions of the Code respecting charges in contempt have been reviewed by the courts in a number of cases, and it is uniformly held that written charges must be filed under §2705.03 **R. C.**, and the accused given an opportunity to be heard. See **Sawbrook Steel Castings Co. v. United Steel Workers of America, 148 Oh St, 73; Albert v. Gus Juengling & Son Co., 115 Oh St 64.**

In the instant case, charges in contempt were filed in writing on November 18, 1953, at 10:50 a. m. These charges related to alleged violations of the temporary restraining order which occurred on Tuesday morning, November 17, 1953. The previous week, the court had heard plaintiff's motion to reduce the number of pickets and its charges in contempt alleged to have occurred on November 4th and 5th, 1953. At the conclusion of plaintiff's evidence, the hearing was continued to Tuesday, November 17, 1953, at which time the court would receive evidence offered by defendants.

As already pointed out, when the court convened on November 17, 1953, plaintiff brought to the attention of the court, in oral statement and before the reception of any evidence on the charges then pending, that earlier this morning large numbers of members of the union and pickets congregated at the gates on 5th Avenue, leading to plaintiff's plant, built barricades and committed acts of violence, all in violation of the court's previous order.

Thereupon the testimony of certain police officers and deputy sheriffs was received as to occurrences earlier in the day. This evidence was received over objection of defendants and

prior to the actual filing of written charges, and related to the number of persons in the groups at the entrances to plaintiff's plant, obstructions in the roadway and damage to automobiles of employes who were about to enter the plant. No evidence was offered as to the personal identity of the members of the groups. The initial evidence was concluded at twenty minutes of three, and thereupon the court resumed hearing the matters that had been continued, as above indicated.

In the opinion of a majority of the court, the reception of the testimony given by the several officers, prior to the actual filing of written charges, was within the sound discretion of the trial court and was not prejudicial to the defendants. It follows that this assignment should not be sustained.

2. The admission in evidence of motion picture films and of certain affidavits offered by plaintiff are assigned as error.

(a) It is claimed by defendants that the motion pictures were carefully selected and show only particular circumstances that insofar as they present "only partial truth," the admission of the motion pictures was prejudicial. Defendants apparently concede that to the extent that persons shown on the pictures are identified as defendants, the pictures would be relevant and admissible.

The record discloses that the motion picture films were taken at entrances to plaintiff's plant on the morning of November 17, 1953, at the time certain of plaintiff's employes were returning to work on the morning shift. The respective photographers testified fully as to the manner of taking the pictures, both on direct and cross-examination, the time of taking, and that the pictures were a true reproduction of events that took place at said time.

Following the reception of the motion picture films in evidence, they were exhibited to the court, and during the showing comments were made on behalf of plaintiff. Thereupon the films were shown to the court a second time and during the showing, comments on behalf of defendants were made. At the conclusion of the oral arguments on the hearing herein, the films were shown to the members of this court.

The receipt of photographs in evidence, which have been accurately taken and sufficiently verified, is within the sound discretion of the court. **17 O. Jur., 579, Sec. 471.** We have found no reported cases in Ohio, and none have been cited, wherein the admission of motion pictures was considered.

Outside of Ohio, where the courts have given consideration to the admission of motion pictures as evidence, it appears from the authorities, which are limited, that their admis-

sibility "is determined by the basic principles governing the admission of still pictures." 20 Amer. Juris., 615, Sec. 738. Also, 1953 supplement thereto, p. 81, and cases cited.

We quote from the annotation in 129 A. L. R., 361, "Use of Moving Pictures as Evidence," as follows:

"Recent authorities hold that motion pictures are admissible in evidence, under a proper exercise of discretion by the trial court, where their relevancy, authenticity and accuracy of portrayal are established by the laying of an adequate foundation."

See also 9 A. L. R., 2nd, 921, Sec. 10.

It is the opinion of a majority of the court that on the record before us there was no abuse of discretion on the part of the trial court, in admitting the motion picture films in evidence and that this assignment of error should not be sustained.

(b) The second branch of this assignment of errors relates to the introduction in evidence of forty-three affidavits, offered by plaintiff, exhibits 41 to 84 inclusive, which were received over the objection of defendants.

The subject matter of these affidavits respectively, related to occurrences on the morning of November 17, 1953, which plaintiff claims were violative of the court's previous order, such as mass picketing at the entrances to plaintiff's plant, threats made to plaintiff's employes, damages to their automobiles as they approached the entrances to the plant and also obstructions on the highway.

Affiants identified several persons who participated in mass picketing, but among those identified, only two, Harvey VanHorne and Kenneth Randle, were named parties defendant. Two other persons who appear to have been served with a citation were also identified. Two additional affidavits were admitted, exhibits 85 and 86, but they were related to events on November 16, 1953.

Defendants contend that since the procedure and penalty provided for in **Chapter 2705 R. C.,** in contempt of court matters, contains no provisions authorizing the use of affidavits on the hearing of the charges made, the admission of the affidavits in evidence was prejudicial error.

As the probative value of the several affidavits was cumulative and related principally to fact matters not sharply in dispute, such as mass picketing and hindering ingress and egress to plaintiff's plant on the morning of November 17, 1953, it does not appear that any prejudice was suffered by defendants in the admission of the affidavits.

3. In the third assignment of error, defendants claim that

the trial court was impelled by bias, prejudice and passion, exceeded its lawful function and deprived the defendants of their constitutional rights to an opportunity to defend.

In support of this assignment, the defendants have taken a number of excerpts from the record which it is claimed show bias and prejudice of the court. Particular emphasis is attached to the extended and somewhat informal colloquy between court and counsel on December 16, 1953, which took place on the hearing of defendants' motion to vacate the judgment entered November 27, 1953, and from which this appeal has been taken.

The significance and importance of statements culled from a record of two thousand pages or more, when considered apart from the context, are capable on being over-emphasized and misinterpreted. Furthermore, in the stress of an extended trial, colloquies between the trial judge and counsel may at times give way to statements that might well have been omitted, but in any event, they do not assume the character of considered judgment and therefore do not reflect the final result nor provide a basis for a charge of bias and prejudice.

As an impartial tribunal and orderly procedure under law are challenged by this assignment, its character and importance are at once apparent.

The issue presented must be adjudged in the light of the whole record. This action grew out of the failure of plaintiff and defendants to agree on a new contract. Thereupon the defendant unions exercised their legal right to call a strike and picket plaintiff's plant.

About one-third of plaintiff's employes were not members of the unions and, as sometimes happens, the cessation of work was not agreeable to all of the union employes.

It appears that picketing early assumed the character of mass picketing, which prevented the free ingress and egress to plaintiff's plant of non-union employees and other persons having such right. This situation formed the predicate for the temporary restraining order limiting the number of pickets and forbidding, among other things, mass picketing and congregating of groups at or near the plant entrances, or any other acts tending to obstruct those who desired to enter the plant.

Under the circumstances thus presented, the invasion of personal and property rights of interested parties would easily be engendered. It appears that the trial court was cognizant of the explosive character of the situation presented, and throughout the several hearings on charges of violence and disorder, frank statements that the order of the court would

be upheld and that disorder and violence, if shown to exist, would result in punishment of those found to be guilty.

The frankness of the trial court is now challenged and is made the basis of the charge of bias and prejudice, and that the court exceeded its lawful function.

It should be observed that continuances were granted defendants, from time to time, to enable counsel for defendant, whose professional responsibilities were onerous, to present an appropriate defense. The record does not disclose that defendants, or any of them, were denied any rights guaranteed to them under the law.

Foregoing an extended discussion, it is our conclusion that, on the whole record, the heavy responsibility of the trial judge, in relation to his official duties, not only to the parties and their counsel but also to the general public, was met with judicial candor and courage, and that this assignment of error should not be sustained.

5. In the final assignment, defendants claim that the plaintiff failed to establish by the required degree of proof: (a) that any of the defendants were guilty of the alleged charges; or (b) that the defendant unions were criminally responsible for the alleged violations of the court's order.

This assignment contains two specifications. We will consider first, the claim that the evidence fails to show the Unions were guilty of contempt.

Conduct constituting contempt of court of the character shown by the record in this case and the proceedings brought to uphold and vindicate the court's authority, are quasi criminal. Under the statute (§2705.02 R. C.) written charges against the accused must be filed and an opportunity be given the accused to be heard (§2705.03 R. C.). If, upon trial, the accused is found guilty, he is subject to a fine or imprisonment, or both. (Sec. 2705.05 R. C.)

It is apparent from the procedure outlined in the statutes that the personal conduct of the accused is the basis for the adjudication of the charge, and that guilt is personal. However, the guilt of the accused may be shown by proof of acts directly contemptuous, or by proof that the accused aided and abetted the alleged violation, or was a member of a conspiracy having as its objective the commission of prohibited acts.

In the instant case, it is clear that the court's order was violated on the morning of November 17, 1953. Was the conduct of any one, or more, of the defendants, contemptuous, and if so, who? That is the remaining issue to be resolved.

It must be borne in mind that the presumption of innocence obtains in contempt cases and that written charges of con-

tempt can not be sustained unless the evidence of guilt is clear, positive and convincing.

**Fawick Airflex Co., Inc., v. United Electrical Radio & Machine Workers of America, Local No. 735, 56 Abs 65, 419, 426; 60 Abs 451; 90 N. E. 2nd, 610; also 101 N. E. 2nd, 797; General Motors Corp. v. United Electrical, Radio & Machine Workers of America, Local No. 717, 31 O. O. 515.**

In the instant case there is no evidence that the Unions, directly or indirectly, aided or abetted, in any manner, the commission of acts in violation of the court's order. The evidence affirmatively shows that the officers of the Unions were diligent in bringing to the attention of the Union members the nature and character of the order, and repeatedly counseled obedience to and strict observance of its provisions. In the absence of any evidence of guilt on the part of the Unions, or either of them, finding the Unions guilty of contempt was not supported by any evidence. It follows that the judgment and fine assessed against each of them should be reversed.

In view of the situation thus presented, it becomes unnecessary to consider under what circumstances an unincorporated voluntary association may be guilty of contempt.

As to defendants Bernard Angus, Kenneth Randle, Paul Ritchie, Harvey VanHorne, Charles F. Walker, and Raymond Wilkerson, a majority of this court is of the opinion that the record shows, by the requisite degree of proof, that said defendants are guilty of violating the temporary restraining order entered October 23, 1953, and are in contempt of court; and that the judgment and imposition of the fine of $500.00 as against each of said defendants should be affirmed, and that said defendants should further be assessed five per cent (5%) of the costs, apportioned equally among them, and the said cause be remanded to the Court of Common Pleas for execution.

In respect to the remaining defendants, the finding and judgment should be reversed and said cause remanded to the Court of Common Pleas with directions to dismiss said charges as to all remaining defendants at plaintiff's costs.

Judgment affirmed in part and reversed in part.

CONN, FESS, JJ, of the Sixth Appellate District, sitting by designation, concur.

DEEDS, J, of the Sixth Appellate District, sitting by designation, dissents.

FESS, J., concurring.

In reliance upon **State v. Fremont Lodge, 151 Oh St 19,**

defendants contend that in Ohio the unions, as voluntary associations are not amenable to suit. A voluntary association itself is not a legal entity subject to be sued, but such an association may be sued as such in an action naming several of its officers or members as individual parties defendant in a class action. **Sec. 2307.21 R. C. (§11257 GC).** And in such a civil action the property and assets of the association are subject to execution upon a judgment obtained therein.

United Mine Workers of America v. Coronado Coal Co., 259 U. S., 344, 66 Law Ed., 975; **McClees v. Brotherhood, 59 Oh Ap 477**; Williams v. Brotherhood, 81 Fed. Sup., 150.

Cf. United States v. United Mine Workers, 330 U. S., 258, 91 Law Ed., 884; **Damm v. Elyria Lodge, 158 Oh St 107.**

In Ohio, proceedings in contempt are regulated by statute. The proceedings in the instant case are governed by the provisions of **Chapter 2705 R. C.,** and §§2727.11 and 2727.12 R. C. **Pilliod v. Searles, 115 Oh St 694.** A person or party charged with the violation of an injunction is entitled to have written charges filed against him and a hearing thereon. **Sec. 2727.11 R. C.,** provides that upon being satisfied by affidavit of the breach of an injunction, a fine of not more than $200.00 may be imposed; but no provision with respect to the use of affidavits is to be found in **Chapter 2505 R. C.** Since the judgment imposed fines of $500.00 upon each of the named defendants, it is apparent that the proceedings were had under **Chapter 2705 R. C.** rather than §2727.11 R. C.

At the hearing, there was admitted, over objection, forty-four affidavits of persons whose automobiles had been damaged in the riot which occurred on the morning of November 17th, but only two of these affidavits identified any particular person as having violated the injunction. In my opinion, since no provision is made for the use of affidavits in **Chapter 2705 R. C.,** these affidavits were not admissible in the contempt proceeding as against any individual defendant, but they were admissible for the purpose of showing the nature, character and extent of the violation of the injunction. The fact that evidence may not be admissible for one purpose does not require its exclusion, but it is admissible on the issue to which it is relevant or for the purpose for which it is competent. **17 O. Jur. 188.** The admission of these affidavits, therefore, did not constitute error.

The same principle applies to the admission of the moving picture films, which the members of this court also viewed in reviewing the record on appeal. The record discloses that over objection of the defendants these moving picture films portraying the riot on November 17th were viewed on three

occasions by the trial court—1st, without comment; 2nd, with comment on behalf of plaintiff, and 3rd, with comment on behalf of the defendants. Only a small portion of this comment by witnesses identifies any defendant as a participant in the riot. Under proper circumstances, moving pictures are admissible upon a basis analogous to the admission of photographs, but so far as the record before us in the instant case is concerned, the showing of the moving pictures merely corroborates other testimony that violence did occur on the morning of November 17th, and for that purpose was admissible.

It seems to be the theory of plaintiff's counsel that upon proof of violation of the injunction by unascertained persons the defendant unions and the named defendants are ipso facto guilty of contempt. As heretofore indicated, the manner in which the action was brought imposes liability upon the unions, but even applying the socalled legal entity principle, it must be grounded upon the doctrine of respondeat superior. Before recovery can be had, the evidence must be such as to disclose that the Union, through its officers, initiated, participated in or ratified the acts of those shown to have violated the injunction and in a contempt proceeding this must be shown by at least clear and convincing testimony. A review of the record fails to show that any of the responsible officers encouraged or incited the violence perpetrated on the morning of November 17th.

As to individual defendants, the usual procedure is to file charges against one or more persons and to proceed with each case seriatim. **Fawick Airflex Co. v. Elec. Workers, 87 Oh Ap 371, ibid, 56 Abs 419, 56 Abs 432, 60 Abs 451.** No particular effort was made to show that any named defendant participated in the violence. The record discloses that defendants Bernard Angus, Kenneth Randle, Paul Ritchie, Harvey Van Horne, Charles F. Walker, were present during the riot and participated in the fighting. The defendant Raymond Wilkerson, who was a picket captain, disavowed any participation in the riot, but he was present and took no effective measures to stop the fight. The trier of the facts could well believe that he was a silent, if not active, participant. Furthermore, under the terms of the injunction limiting the number of pickets, he had no right to be there with his parked car at the time in the midst of the riot. In their brief, defendants tacitly admit the participation by these defendants, but contend that by reason of the large number of persons employed by the plaintiff, these men were not positively identified.

I therefore concur in the conclusion of Judge Conn that the judgment should be affirmed as to these six defendants.

Under §2705.05 R. C., since the amount of the fine is limited to $500.00, the imposition of the fine of $50,000.00 was without legal justification. With respect to that portion of the judgment suspending $25,000.00 upon making restitution to persons injured in person or property, there is likewise no authority of law. A court of equity neither has jurisdiction nor does it have the facilities to determine a large number of unliquidated damage claims, even in a class action. **Davis v. Columbia Gas & Elec. Co,. 151 Oh St 417.** Such claimants themselves have the right to recovery in separate actions at law.

In my opinion, the judgment should be affirmed as to the imposition of the fines of $500.00 against the above six defendants and reversed and final judgment entered as to the remaining defendants.

DEEDS, J, dissenting.

It is my view that the action of the Court of Common Pleas in entering a joint judgment against one hundred defendants, including the defendant Union, in the sum of $50,000.00 was without authority in law and therefore erroneous. **State v. Loyal Order of Moose, 151 Oh St 19;** also as stated in 33 Labor Relations Report, 206 (BHA) January 16, 1954:

"In determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the common law rules relating to agency shall be applicable. Provided, that no labor organization shall be held responsible for the acts of individual members thereof solely on the grounds of such membership."

Also, that the Court of Common Pleas was without authority in law in ordering, in addition to the imposition of fines in the extreme amount authorized by law as a punishment for contempt, that defendants be required to pay all claims for damage to person or property sustained by any of the (18,000) employes of the plaintiff, which may be presented to the court and approved, without limitation as to amount and without regard to the Code of Civil Procedure of the State, or the right to a trial by a jury.

It further appears from the record that a very substantial portion of the evidence offered by the plaintiff was received by the court for consideration, before any written charges had been filed against the defendants, as required by §2705.03 R. C., and also the decisions of the Supreme Court of the State interpreting that requirement of the law.

**Albert v. The G. Juengling & Son Co., 115 Oh St 64; Castings Co. v. Steelworkers, 148 Oh St 73.**

Motion pictures were exhibited and viewed as evidence by the court, which portrayed a wide variety of incidents, actions and movements by unidentified groups, assaults, damaged automobiles and other evidence of a highly prejudicial character, covering a wide undefined area, without any evidence to show that the individual defendants were in any way responsible for or were in any manner connected with, scarcely any of the many prejudicial occurrences and conditions portrayed by the motion pictures, all of which in my view amounted to a serious violation of the established rules of law, governing the introduction of evidence and such exhibition was therefore clearly erroneous to the prejudice of each and all of the defendants.

The trial court also received in evidence numerous affidavits purporting to prove a wide variety of prejudicial matters and occurrences, without any proof that the individual defendants were in any way responsible for or connected with most of the actions and matters which such affidavits purported to prove, all of which it seems clear was contrary to the law and acknowledged rules of evidence and was highly prejudicial.

Therefore, considering the foregoing errors and the attempt of the trial court, as shown by the judgment entry, to make the Union as a legal entity or the defendants jointly responsible to pay a fine of $50,000.00, or if partially suspended as provided, $25,000.00, and in addition thereto to pay damages without any limitation as to the number of claims or aggregate amount of such claims, to be determined without regard to the legal requirements of civil procedure, this court is without authority in the situation presented by the record to modify such judgment or substitute its judgment for that of the trial court. **Chester Park Co. v. Schulte, Admr., 120 Oh St 273; In re Estate of Johnson; Morgan et al. v. Fink, 142 Oh St 49; Bishop v. East Ohio Gas Co., 143 Oh St 541.**

It is my conclusion on the record in the case before us for review, it being an appeal on questions of law only, that when the incompetent evidence of a prejudicial character is excluded from consideration, there is no substantial evidence to support a judgment against any of the defendants and that therefore final judgment should be entered by this court accordingly, for the defendants.