GILMORE ET AL. *v.* GENERAL MOTORS CORP.

(No. 901040—Decided April 6, 1973.)

Court of Common Pleas of Cuyahoga County.

*Messrs. Metzenbaum, Gaines, Finley & Stern, Mr. Donald M. Robiner* and *Mr. Roger W. Van Deusen,* for plaintiff.

*Messrs. Jones, Day, Cockley & Reavis, Mr. Victor DeMarco, Mr. Patrick F. McCartan, Mr. John L. Strauch, Mr. John P. Freeman, Mr. Ross L. Malone, Mr. Otis M. Smith* and *Mr. Robert W. Culver,* for defendant.

ANGELOTTA, J. This is an action in which 46 named plaintiffs (45 individuals and one corporation) have sued General Motors Corporation for relief from alleged defective Corvair automobiles for the model years 1961 through 1969. The named plaintiffs seek to maintain their suit as a class action on behalf of a class of all Ohio residents who now own or ever owned any Corvair for any of the nine

model years first mentioned, whose vehicles are no longer covered by the factory warranty. The class involved numbers in the hundreds of thousands, since plaintiffs allege that there are 70,000 Corvairs presently registered in Ohio, this being just the number of present Corvair owners.

The complaint alleges that the Corvairs for these model years contain defective heaters, which, under normal operating conditions, can permit engine fumes to enter the vehicle. There is no claim that all of the cars, or even a stated proportion, are leaking fumes. In fact, plaintiffs seek a statewide mandatory injunction requiring defendant to inspect all Corvairs in Ohio, and to repair them without charge "when necessary." Plaintiffs also ask that all members of the class who ever paid for repairs "relating to" the alleged defect be reimbursed.

The complaint contains many theories—breach of express and implied warranties; public and private nuisance; that the factory warranties which were given to the purchasers are invalid and unenforceable; that defendant had actual or constructive knowledge of the defect and didn't issue warnings; that defendant was unjustly enriched because some owners have already paid for repairs; and that defendant violated the federal Civil Rights Act by discriminating against owners whose cars were out of warranty when defendant repaired cars still within warranty without charge. Although $1,000 is sought for each class member under this Civil Rights Act count (alleging a violation of 42 U. S. Code, Sections 1981, 1983 and 1985(3)), plaintiffs did not argue this count in their class action motion. Section 1981 deals only with racial discrimination, *Jones* v. *Alfred H. Moyer Co.* (1968), 392 U. S. 409, 413; *Schroeder* v. *Illinois* (C. C. A. 7, 1965), 354 F. 2d 561, 562, *cert. denied*, 384 U. S. 972; section 1983 requires that a defendant be acting under "color of state law" through conduct having the force of state law, *Adickes* v. *S. H. Kress & Co.* (1970), 398 U. S. 144; *Monroe* v. *Pape* (1961), 365 U. S. 167; and section 1985-(3) requires a showing of a deprivation of "equal protection of the law." *Griffin* v. *Breckenridge* (1971), 403 U. S. 88, 102-03. Anyway, as explained

later, there are differences among various owners in the class.

The case is now before the court on plaintiffs' motion to certify the action as a class action under Civil Rule 23. Plaintiffs acknowledge they have the burden of showing that they should be allowed to maintain this action as a class action. The court concludes plaintiffs have not sustained the requisite burden of proof and denies the motion.

Civ. R. 23 provides as follows:

(A) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(B) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any

questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

(C) Determination by order whether class action to be maintained; notice; judgment; actions conducted partially as class actions.

(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

(2) In any class action maintained under subdivision (B)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (a) the court will exclude him from the class if he so requests by a specified date; (b) the judgment, whether favorable or not, will include all members who do not request exclusion; and (c) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

(3) The judgment in an action maintained as a class action under subdivision (B)(1) or (B)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (B)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (C)(2) was directed, and who have not re-

quested exclusion, and whom the court finds to be members of the class.

(4) When appropriate (a) an action may be brought or maintained as a class action with respect to paticular issues, or (b) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

(D) Orders in conduct of actions. In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time.

(E) Dismissal or compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

(F) Aggregation of claims. The claims of the class shall be aggregated in determining the jurisdiction of the court.

Civ. R. 23 is almost identical to the F. R. Civ. P. 23. Therefore, the federal cases which have been decided are useful as authorities.

One thing that both sides agree on is that all class actions under Civ. R. 23 require enough commonality of fact

and law questions to make it sensible to try the case as a class action. Too many individual questions will make class action treatment impossible. Plaintiffs know this because they presented the court with a series of questions they claimed were common. In fact, as defendants showed, an analysis of plaintiffs' own questions showed them to be individualistic.

For example, plaintiffs claimed that the question of whether or not the vehicles were "unsafe under normal operating conditions" was a common question. But this would be a conclusion resolving in favor of plaintiffs' many questions covering nine different model years. Plaintiffs admit this, because they say in the complaint that only some vehicles which are inspected will need "necessary" repairs. They also say that when repairs are needed they will vary between $60 and $170, which shows differences between vehicles. Civ. R. 23 does not cover mass accidents like plane crashes because that kind of case is too individual (Proposed Amendments to F. R. Civ. P, 39 F. R. D. 98, 103) and, likewise, does not cover this product liability case.

Also, plaintiffs claim that the question of whether car owners have actually been exposed to carbon monoxide fumes during the normal operation of their vehicles is common. But there is no claim that all owners have been exposed. Even if some have been exposed, the question of whether this was caused by the design or manufacture of the car depends upon vehicle maintenance, and history with reference to accident and repair, if any.

The warranty claims which plaintiffs point to are also very individual. Nine years are covered, and the claims each owner may have heard or seen, and relied upon in advertising will vary from one to the other. Many members of the class have bought their cars used—from the second, third or even fourth owner. This would present, in each case, different fact and law questions. The new car buyer is in a very different position. Reliance is also a key factor, especially for express warranties. *Rogers* v. *Toni Home Permanent Co.* (1958), 167 Ohio St. 244. How can this be determined for each car buyer in a class action?

Plaintiffs claim that the negligence issue is common,

but it, also, would differ among class members. Nine model years are covered. Different cars were produced at different plants at different times. Negligence in manufacture and design involves technology and knowledge available *at the time.* How could a jury, or a court, separate the evidence applying to each year? It would be impossible. The same reasoning applies to the claim that defendant had actual or constructive knowledge of defects. That would depend upon what was known or could have been known at the time and, again, nine different years are involved.

The facts supporting the claim that all the new car warranties given with the cars involved were invalid are also not common. If a claim of inequality in bargaining is made, the task of proving such would be huge as this claim would involve many different kinds of people—and even firms, corporations and car dealers. The warranties differ from year to year, also, and, undoubtedly, so too do they differ from those given by other car companies. This would all have to be taken into account.

So far these have been the questions plaintiffs, themselves, have called common. As can be seen, they are really very individual. In addition, plaintiffs admit that certain questions, such as defenses involving the statute of limitations and damages, are very individual. Also, many Ohio residents probably bought their cars in other states, so this court would have to apply the laws of a number of different states to many of these issues.

Differences not even this great have prevented courts from allowing actions as class actions. *Dale* v. *Hahn* (C. C. A. 2, 1971), 440 F. 2d 633; *Caldwell* v. *Craighead* (C. C. A. 6, 1970), 432 F. 2d 213, 217; *Heckart* v. *Pate* (N. D. Ill. 1971), 52 F. R. D. 224; *Purdes* v. *Carvel Hall, Inc.* (S. D. Iowa, 1969), 301 F. Supp. 1256; *Bailey* v. *Sabine River Authority* (W. D. La. 1971), 54 F. R. D. 42; *Reinisch* v. *New York Stock Exchange* (S. D. N. Y. 1971), 15 FR Serv. 2d 168; *City and County of Denver* v. *American Oil Co.* (D. Colo. 1971), 53 F. R. D. 620; *Schaffer* v. *Chemical Bank* (S. D. N. Y. 1971), CCH Fed. Sec. L. Rep. Para. 93,403. The court has reviewed *Miles* v. *N. J. Motors* (1972), 32 Ohio

App. 2d 350, and finds it inapplicable. That case involved, in effect, whether a single commercial practice was legal under Ohio statutes. There were few, if any, individual questions of fact or law and certainly, if any existed, they were not of the magnitude presented here. This is a products liability case, and never in products liability cases has class action treatment been held allowable.

It is clear that other requirements for class actions are not present. In view of the many uncommon questions, for example, no plaintiffs could fairly represent other class members, and no claims are really typical of others. Some claims even conflict. As among several owners of the same car, who is to recover? Some class members will want to press express warranties, others implied warranties, but both can't be pressed. *Inglis* v. *American Motors Corp.* (1965), 3 Ohio St. 2d 132. Used car dealers and even new car dealers are in the class, and other class members may have claims against them.

It is clear from what has already been said that management difficulties for this case as a class action would be impossible to overcome. The many individual questions would make it impossible to distinguish facts, apply law, and charge the jury. Notifying class members would be an almost impossible task. If all 70,000 first owners can be identified, notices would have to be mailed to all. Former owners, would be difficult to even identify, and they must be several hundred thousand. In addition, the class is constantly changing.

Finally, this action does not meet the requirements of any of the specific categories described in Rule 23(B)(1), (2) or (3). Plaintiffs themselves say that (B)(3) is the most liberal for class actions, but this case doesn't meet the requirements (B)(3) for the reasons already stated. (B)(1) and (B)(2) class actions require even more commonality than the predominance in (B)(3), so those sections are not satisfied here. In addition, there is no risk of inconsistent adjudication here as required by (B)(1). As for (B)(2), in addition to lacking commonality, this is not a suit where injunctive relief would be appropriate or desirable. Al-

though an injunction (statewide and mandatory) is asked, the suit is really for damages. Plaintiffs even estimate repair costs. The asserted character of this case is a damage action at law. *Davies* v. *Columbia Gas & Elec. Corp.* (1949), 151 Ohio St. 417; *The Complete Building Show Co.* v. *Albertson* (1918), 99 Ohio St. 11; *North American Aviation, Inc.,* v. *U. A. A. & A. I. Workers* (1954), 69 Ohio Law Abs. 242. As (B)(2) provides by its terms, the action must be one where final injunctive relief is appropriate. Proposed Amendments to F. R. Civ. P., *supra.*

In closing, the court wants to say a word about due process and class actions. While the class action device is a laudable instrument for the enforcement of small claims where it is appropriate, its use where it is not appropriate creates unfairness. For example, if this were a single plaintiff case, both sides would obviously have the right to go into things such as what the plaintiff heard and saw, and what he relied on as warranties, the circumstances of the car purchase, accidents, maintenance and repair history, the present value of the vehicle, etc. This is typical in an auto warranty case. These things can't be ignored for the sake of a class action, and they obviously cannot be handled in a class action by either the court, or a jury, or the parties. Attempting to try what would really be thousands of individual cases as one would be fair to no one.

In ruling as it does, the court joins the Superior Court of the District of Columbia, which refused to permit the same type of case as a class action for all District of Columbia owners. *Wick* v. *General Motors Corp.,* Superior Court No. 3131-72. An attempted national class action involving these same issues was also dismissed as a class action by a Michigan Circuit Court. *Robiner et al.* v. *General Motors Corp.,* Wayne County No. 172865. Although that was an attempted national class action, much of what the court said—particularly about the case presenting highly individual issues—applies here.

Therefore, the plaintiffs' motion to certify this action as a class action is overruled.

*Motion overruled.*