Amato, Appellee, *v.* General Motors Corporation, Appellant.

(No. 39645—Decided November 18, 1982.)

*Mr. Andrew M. Fishman,* for appellee.

*Mr. Patrick F. McCartan, Mr. John L. Strauch, Mr. Donald N. Jaffe* and *Mr. Michael A. Nims,* for appellant.

Day, P.J. The general issue in this appeal is the legal propriety of a class certified for class action by the trial court pursuant to Civ. R. 23.[1]

Paul Amato is plaintiff-appellee ("appellee") and General Motors Corp. is defendant-appellant ("appellant").[2]

For reasons adduced below the certification is provisionally approved and the cause remanded to the trial court for further proceedings.

---

[1] This case was originally appealed ( [May 30, 1980], Cuyahoga App. No. 39645, unreported) by General Motors Corp. from the trial court's determination that the suit by Paul Amato be certified as a Civ. R. 23 class action. This court's conclusion that the certification was not a final order was taken to the Supreme Court of Ohio which reversed and remanded here for hearing on the merits of the certification in *Amato* v. *General Motors Corp.* (1981), 67 Ohio St. 2d 253, 259 [21 O.O.3d 158].

[2] These designations of the parties are the same as those used on review in the Supreme Court of Ohio.

## I

The facts necessary to the disposition of this case are principally procedural. They are summarized in the opinion of the Supreme Court of Ohio which, on motion to certify, reversed this court's action dismissing the appeal for lack of a final order. The Supreme Court remanded the case for decision on the merits of the first appeal. The crucial procedural facts are set out in the Supreme Court opinion:

"Appellee, Paul L. Amato, was one of the consumers who purchased an Oldsmobile equipped with an engine manufactured by the Chevrolet Division. Upon discovering this, appellee initiated the present action by filing an amended complaint in the Court of Common Pleas of Cuyahoga County, against appellant and A. D. Pelunis Oldsmobile, Inc. (Pelunis), the dealer from whom appellee purchased his car. Appellee's complaint contained claims for breach of contract, breach of express and implied warranty, common law fraud, and violations of the Ohio Consumers' Sales Practices Act, R.C. Chapter 1345 (Act).

"The appellee, pursuant to Civ. R. 23, sought to represent all Ohio consumers, 'who previously owned, or presently or will own,' one or more 1977 Oldsmobiles which came equipped with an engine other than one manufactured by the Oldsmobile Division (consumer class). Additionally, appellee sought certification of a defendant class of dealers with Pelunis acting as the representative of the putative defendant class (dealer class).

"By order dated June 12, 1978, the trial court ruled that a consumer class action was maintainable under Civ. R. 23(B)(3). The class was limited to those residents of Ohio who had purchased new 1977 Oldsmobiles, and the claims were limited to those for breach of express warranty, common law fraud and violation of the Act. Additionally, the trial court refused to certify the dealer class, holding that threshold requirements of commonality and typicality, Civ. R. 23(A)(2) and (3), had not been met." (Footnotes omitted.)[3]

## II

The class certified by the trial court was:

"[T]he Court certifies the fraud, breach of express warranty and violation of the Consumer Sales Practices Act claims as a Civ. R. 23(B)(3) class action with the following qualifications: (1) the plaintiff class shall consist of only those Ohio residents who purchased new 1977 Oldsmobiles equipped with Chevrolet engines; (2) the defendant shall be General Motors; (3) plaintiff Amato's individual lawsuit against the dealer, A.D. Pelunis, is stayed until further order by the Court."

Although the grounds vary all the assignments of error are confined to an attack upon the stated certification.

## III

The appellant's challenge to the certified class assigns six errors:

"1. The lower court erred in holding that a cause of action for fraud or breach of warranty, or for consumer deception under O.R.C. §§ 1345.01 et seq., can be established in the absence of proof that the plaintiffs had in fact been exposed to a misleading representation or advertisement.

"2. The lower court erred in holding that a cause of action for fraud or breach of warranty, or for consumer deception under O.R.C. §§ 1345.01 et seq., can be established in the absence of proof that the plaintiffs relied upon some misleading representation or advertisement.

"3. The lower court erred by holding that the element of reliance can be presumed on a class-wide basis in an action setting forth claims of fraud or

---

[3] *Amato* v. *General Motors Corp.*, at 253-254.

breach of warranty, or of consumer deception under O.R.C. §§ 1345.01 *et seq.*

"4. The lower court erred in shifting the burden of proof to defendant General Motors Corporation and requiring General Motors to disprove, on an individual basis, the class-wide reliance which the lower court has presumed to exist.

"5. The trial court erred by holding that the unique facets of the specific sales transactions through which the plaintiffs purchased their vehicles were irrelevant to their claims, and the lower court's staying of this action as against the automobile dealer defendant could not cure this error.

"6. The lower court erred in certifying in a class action those claims set forth for fraud and breach of warranty, and for consumer deception under O.R.C. §§ 1345.01 *et seq.*"

The assignments are not precisely matched, *seriatim,* to relevant arguments in the appellant's brief. Thus, the court's duty to address each assignment (App. R. 12[A]) is made more difficult. Of course, that obligation may be removed when a party fails to meet its obligation under the rule.[4]

## IV

At this stage of the case no record exists that includes the transcript of the evidence. For a trial adducing proof on the merits has not been held. When and if a trial does take place, the principles enunciated here to dispose of the assignments of error may result in a decision for either of the parties. All that the dispositions aim to do at this point is determine procedural issues germane to class actions within the limits imposed by the perimeters of the assignments of error. Additional questions pertinent to potential class determinations under the circumstances peculiar to this case are canvassed under Part XI, *infra.*

## V

The issue under the first assignment of error is whether a cause of action for fraud or breach of warranty or for consumer deception under R.C. 1345.01 *et seq.* can be established without proof that individual plaintiffs had been exposed to a misleading representation or advertisement.

It may be that the claim under this assignment is vulnerable to challenge as a request for an advisory opinion and for prematurity. For there has been no dispositive ruling on an attempt to prove consumer deception without proving exposure to a misleading representation or advertisement.

Instead the trial court held that proof that certain representations were made and, whether made truly or falsely, could be established without resort to the testimony of individual class members. This is patently true. The exposure of individual class members is a different matter. And whether exposure can be shown presumptively (subject to rebuttal) by proving that material representations were made to the general public may be a point of first impression in Ohio.

In a day of mass media advertising hype intended to saturate markets with inducements to purchase the heralded product, consumer claims would amount to little if acceptance of the representations made for the product could be manifested only by one-on-one proof of individual exposure. Cf. *Green* v. *Wolf Corp.* (C.A. 2, 1968), 406 F. 2d 291, 301. The implication of such a requirement is that a multiplicity of individual claims would have to be proven in separate

---

[4] See the last two sentences of App. R. 12(A): "Errors not specifically pointed out in the record and separately argued by brief may be disregarded. All errors assigned and briefed shall be passed upon by the court in writing, stating the reasons for the court's decision as to each such error."

lawsuits, or not at all. That consequence would result in the utter negation of the fundamental objectives of class-action procedure both expressed and implicit in Civ. R. 23.[5]

For these reasons proof of extensive advertising is sufficient to make a prima facie case for actual exposure. Of course exposure proof may be enhanced by additional evidence of exposure such as, but not limited to, a custom or practice of distributing express written warranties to prospective buyers with terms relevant to the plaintiff's claim.

The first assignment of error lacks merit.

## VI

The second assignment has much in common with the first. There is an interdependency. For exposure without reliance would necessarily block recovery. The problem is how is reliance to be proven.

The Supreme Court of California disposed of the reliance problem in class actions persuasively. In *Vasquez* v. *Superior Court of San Joaquin Cty.* (1971), 4 Cal. 3d 800, 814-815, 94 Cal. Rptr. 796, 804-805, 484 P. 2d 964, 972-973, the court held that reliance need not be shown by direct evidence. Instead, it held that reliance may be inferred from circumstances which sometimes provide stronger evidence of inducement than a party's direct testimony to the same effect. And whether the consequence of the circumstantial evidence is a presumption of reliance (as some scholarly analysis suggests) or an inference, such evidence is enough for class-action purposes to warrant the conclusion that:

"[I]f the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class. Defendants may, of course, introduce evidence in rebuttal." (Footnote omitted.) *Id.* at 814, 94 Cal. Rptr. at 805, 484 P. 2d at 973.

The difference between inferences and presumptions is sometimes blurred when deciding whether the evidence on a particular issue is sufficient to make a prima facie case requiring judgment if unrebutted or is simply supported by sufficient evidence to warrant submission of the issue to a jury.[6] To avoid that confu-

---

[5] See, particularly, Civ. R. 23(A) and (B)(3):

"(A) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(B) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

"* * *

"(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."

[6] A presumption shifts the burden of going forward (not the burden of proof) and, if unrebutted, entitles the beneficiary of the presumption to judgment on the point at issue. *Carson* v. *Metropolitan Life Ins. Co.* (1956), 165 Ohio St. 238, 243-244 [59 O.O. 310]. An inference, whether rebuttal is attempted or not, moves the issue to the fact finder for decision. *Ayers* v. *Woodward* (1957), 166 Ohio St. 138,

sion it is held here and now that proof of reliance may be sufficiently established by inference or presumption from circumstantial evidence to warrant submission to a jury without direct testimony from each member of the class.

Accordingly, the second assignment of error lacks merit.

## VII

The third assignment of error attacks the sufficiency of proof of reliance "presumed" on a class-wide basis.

The question raised by the assignment is, at bottom, whether reliance can be proved by circumstantial evidence without direct evidence from each member of the class. The response to the question whether a class-wide reliance is properly "presumed" depends on the circumstances adduced to support the presumed reliance. See *Vasquez* v. *Superior Court of San Joaquin Cty., supra,* at 814, 94 Cal. Rptr. at 804, 484 P. 2d at 972. The concern is with the technique of proof.

That concern has credence only if one assumes that a class action as a generic method of suit is improper. Actually, the law is beyond that point. Class actions are an established mode for remedying class hurts which can be remedied by individual suits only at stultifying cost and extreme burden to the judicial system. This does not mean that defendants in class actions are at the mercy of the class-action concern for practicality. It does mean in a situation such as the present one that if the elements warranting a class action are to be proven, the proof need not be fragmented unless it can be demonstrated that defenses are not typical. When defense atypicality can be demonstrated

sufficiently (a problem for the defense which has the burden of going forward but not the burden of persuasion), the occasion arises for a modification or a decertification of the class. However, the method of proof, *qua* method, does not render the class improper.

The third assignment of error lacks merit.

## VIII

The fourth assignment of error attacks a class-wide presumption of reliance on the ground that such a "presumption" shifts the burden of proving non-reliance to the defendant.

Actually it is not the burden of proof which shifts. Rather it is the burden of going forward. And in this particular the effect of the presumption (or inference) is no different in the shifting aspect than when the effect is the basis for proof of individual reliance. For a presumption available to prove individual reliance also shifts the burden of going forward.[7] The defendant's objection really takes aim at the function of presumptions and inferences. The only difference between those concepts in a class-wide suit and an individual suit is the increased difficulty in satisfying the burden of going forward class wide. Thus, it appears that the defense objection is to the proof characteristics of class actions. It is true class actions are designed to provide a viable remedy for numerous plaintiffs and conserve judicial resources where numbers make joinder impracticable. However, the potential parties must be linked by commonality and typicality of claims and defenses, and representative parties must fairly and adequately protect

---

145 [1 O.O.2d 377]. The difference may be slight. It is real.

[7] Evid. R. 301 provides:

"In all civil actions and proceedings not otherwise provided for by statute enacted by the General Assembly or by these rules, a

presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast."

the class interests. And these factors must be both present and coupled (under Civ. R. 23[B]) with any one of several factors which argue for class rather than individual disposition. See Civ. R. 23(B)(1), (2), and (3).

The trial court found that Civ. R.23(A) requisites were satisfied and that these elements joined Civ. R. 23(B)(3) considerations to warrant certifying the class in issue here. That is, to satisfy Civ. R. 23(B) the trial court found for a limited class and, in effect, that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Proofs on the merits of this case have not yet been introduced and it is not the office of a reviewing court to suggest avenues of proof to the parties. Suffice it to say that imagination calls up various proof and rebuttal possibilities that may be available to the parties. Until the opportunities are exhausted at trial, one can only speculate whether a case can be made in all the necessary elements. On this score it is noted that the rule permits a trial court considerable flexibility in deciding classes and in determining which issues may be brought or maintained in a class action. Civ. R. 23(C)(4).

The fourth assignment of error lacks merit.

## IX

The fifth assignment of error claims the lower court erred "by holding that the unique facets of the specific sales transaction * * * were irrelevant to their [plaintiffs'] claims."

The defendant does not have a reference point for this claimed error. There is no citation from the trial court's memorandum opinion which tracks the claim. The putative error is at best defendant's inference from the indication that exposure and reliance need not be established directly purchaser by purchaser.

The defendant relied heavily on this court's opinion in *Gilmore* v. *General Motors Corp.* (1973), 35 Ohio Misc. 36 [64 O.O.2d 180], affirmed (Dec. 19, 1974), Cuyahoga App. No. 32726, unreported. The claimed facts in *Gilmore* bear so little resemblance to the factual contentions here that *Gilmore* is readily distinguishable. The distinction needs no extended analysis. A short comparison of facts in the respective cases will highlight the differences.

(1) *Gilmore* involved vehicles manufactured in nine different years; (2) while there was a claim of exposure to carbon monoxide fumes in *Gilmore* there was no claim that all owners were exposed; and (3) no isolation of cause. Cause might have been in design or manufacture or it might have been the maintenance or accident and repair history.

By contrast, the primary liability issue under the class certification in the present case is the substitution of Chevrolet engines for Oldsmobile engines in 1977 Oldsmobiles purchased new by Ohio residents. Thus here there is neither the yearly model change, nor the diversity of exposures nor possible plurality of causes for the claimed breach of warranty that is characteristic of *Gilmore*. The recital of these differences without more extended analysis proves that reliance on *Gilmore* is misplaced.

Finally, it may be that defendant will be able to mount a defensive demonstration which destroys the class by showing that defenses are necessarily atypical.

The fifth assignment of error lacks merit.

## X

The sixth assignment of error overlaps in some measure the first five. To the degree that this is so the requisite disposi-

tions have been made.[8] However, the defendant's brief expands the assignment to include a challenge to the certification of a class when the underlying cause of action is based on the Consumer Sales Practices Act (R.C. Chapter 1345). The challenge travels on the proposition that class-action certification is precluded by R.C. 1345.09. In pertinent part that section provides:

"For a violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:

"(A) Where the violation was an act prohibited by section 1345.02 or 1345.03 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover his damages.

"(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater, or recover damages or other ap-

propriate relief in a class action under Civil Rule 23, as amended."

In fine, a consumer class action is authorized under the statute only in particular circumstances. Those circumstances include a violation which is:

"* * * [A]n act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code[9] before the consumer transaction on which the action is based * * *." (R.C. 1345.09[B].)

The question is whether there has been any rule declaration sufficiently elaborating practices condemned under R.C. 1345.02 and 1345.03 to reach the motor substitution claimed in this case. All that R.C. 1345.05(B) demands are rules with "reasonable specificity." Unless one assumes that a declaration is ineffective unless it specifies the noxious act or practice by name, there must be some leeway for a general rule which reasonably tells potential actors or practitioners what they may not do.

Without attempting at this juncture of the proceedings to limit the application of particular subsections of R.C. 1345.02 and 1345.03, as defined by the Director of Commerce, it appears that two subsections of R.C. 1345.02 may be relevant:

"(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:
"* * *
"(2) That the subject of a consumer

---

[8] One of the problems created by treating a class certification as a final order is the necessity for determining the propriety of the determination before a sufficient record is created to provide a basis for testing the class against the Civ. R. 23 standards. This "final order" approach also invites multiple appeals.

[9] R.C. 1345.05(B)(2) provides:
"(B) The director [of commerce] may:
"* * *
"(2) Adopt, amend, and repeal substan-

tive rules defining with reasonable specificity acts or practices that violate sections 1345.02 and 1345.03 of the Revised Code. In adopting, amending, or repealing substantive rules defining acts or practices that violate section 1345.02 of the Revised Code, due consideration and great weight shall be given to federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretations of subsection 45(a)(1) of the 'Federal Trade Commission Act,' 38 Stat. 717 (1914), 15 U.S.C. 41, as amended."

transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;

"* * *

"(5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section; * * *"

The Director of Commerce had promulgated Ohio Adm. Code 1301:3-3-02[10] and 1301:3-3-03[11] (now Ohio Adm. Code 109:4-3-02 and 109:4-3-03) before the crucial events in this case.[12] While it is true that the rules did not mention surreptitious motor substitutions by name, generic aspects of the definitions are sufficient to put a reasonable person on notice of the prohibition. The prohibition of promotional advertising which omits material exclusions, reservations, modifications or conditions (Rule 1301:3-3-02) and the forbidding of bait and switch tactics (Rule 1301:3-3-03) are enough to permit class actions under the consumer protection legislation.

Defendant's sixth assignment of error lacks merit.

XI

There are additional questions of relevance to class certification which are not within the ambit of the assignments of error. These should be considered by the trial court when this case goes back there for trial on the merits.

These questions are:

1. Should the class include purchasers who bought outside the state of Ohio since one of the bases for certification is an Ohio statute?

2. Should the change in advertising in the midst of 1977 affect the class composition, particularly with respect to the representation and reliance presumptions for those persons who bought after the change, assuming the changed advertising indicated the motor switch?

3. Did the change in substantive rules pursuant to R.C. 1345.05(B)(2), effective during 1977 (November 23, 1977),

---

[10] "(A)(1) It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions. Disclosure shall be easily legible to anyone reading the advertising or promotional literature and shall be sufficiently specific so as to leave no reasonable probability that the terms of the offer might be misunderstood.

"[List of illustrations omitted.]

"(B) Offers made through radio or television advertising must be preceded or immediately followed by a conspicuously clear and oral statement of any exclusions, reservations, limitations, modifications, or conditions."

[11] "(A) It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to offer to sell goods or services when the offer is not a bona fide effort to sell the advertised goods or services.

"(1) An offer is not bona fide when a supplier uses a statement or illustration in any advertisement which would create in the mind of a reasonable consumer a false impression of the grade, quality, quantity, make, value, model year, size, color, usability, or origin of the goods or services offered or which otherwise misrepresents the goods or services in such a manner that, on subsequent disclosure or discovery of the true facts, the consumer is switched from the advertised goods or services to other goods or services. An offer is not bona fide, even though the true facts are made known to the consumer before he views the advertised goods or services, if the first contact or interview is secured by deception."

[12] Amendments in November 1977 did not change the rules recited in footnotes 10 and 11, *supra.*

(a) alter the existing definitions in a way to disqualify an otherwise appropriate class action; (b) require a change in the certified class; or (c) require the certification of an additional, different class?

## XII

The decision certifying the class is provisionally affirmed. The cause is remanded with instructions to resolve the questions raised under Part XI of this opinion. Modifications of the class certification, if any, are to be made before proceeding on the merits of the claim.[13]

Judgment affirmed with instructions.

*Judgment affirmed.*

CARROLL, J., concurs.

MARKUS, J., dissents.

CARROLL, J., of the Court of Common Pleas of Cuyahoga County, sitting by assignment in the Eighth Appellate District.

MARKUS, J., dissenting. In my view the majority approves a provisional class certification order when the class proponent has failed to demonstrate the requisites specified in Civ. R. 23(A). Certification of a class requires factual findings from evidentiary sources that the prerequisites have been satisfied. Since I believe that the class certification order was premature, even though it may be supportable at a later time, I respectfully dissent.

The trial court's certification order rests almost entirely on the allegations in plaintiff's complaint. As summarized in the trial court's opinion, the significant allegations are as follows:

"Amato alleges that General Motors and its Olsmobile [*sic*] dealers represented to buyers that the 1977 Oldsmobiles had Oldsmobile engines, but that in fact five thousand Ohio purchasers received 1977 Oldsmosbiles [*sic*] equipped with Chevrolet engines. These representations, the complaint states were made by means of mass media advertisements, sample showroom automobiles, sales brochures and oral statements. The Chevrolet engines, plaintiff avers, were inferior to Oldsmobile engines."

No factual finding was made that the alleged representations in a wide variety of circumstances were identical, or even that they were substantially similar. Apparently no evidence was submitted to the trial court which would support that conclusion. Obviously the degree of similarity of the alleged representations bears directly on the class-action requirements of commonality and typicality.

While the broad, general allegations of the complaint would suffice to state an individual claim by this plaintiff, it fails to demonstrate class-action requirements with sufficient precision. Thus, representations may not be sufficiently similar to support class-action treatment if some stated the engines were "manufactured by the Olds Division," while others stated that the engines were "similar to Olds engines," or "as good as Olds engines," or "engines usually supplied with Olds automobiles." Before we can determine the propriety of class certifications, the trial court must determine the precise nature of the representations involved in the various forms of their communication.

The majority opinion also modifies important substantive rules to facilitate or accommodate class-action treatment. In my judgment, changes in substantive law are not justified for procedural convenience in these circumstances. The majority permits an inference or a presump-

---

[13] Modification may result in additional delays occasioned by additional appeals. However, this is an inevitable consequence of finding a class certification a final order. See *Amato* v. *General Motors Corp., supra.*

tion that the unspecified representations were communicated to every potential class member and were affirmatively relied upon by every potential class member, simply because those unspecified representations or some other similar unspecified representations were included in a variety of mass advertising formats. Use of such inferences or presumptions in class actions is inappropriate unless similar inferences or presumptions are adopted for individual claims. The individual plaintiff may well complain that he has been denied equal protection by an evidentiary rule applicable only when he can gather numerous other claimants to assert the same rights.

Further, the class-action defendant is placed in the difficult or impossible position of disproving the facts peculiarly within the knowledge of his multitudinous adversaries, particularly when those adversaries are not easily accessible for traditional discovery procedures. It is not clear that General Motors can submit written interrogatories to the 5,000 alleged class members, some of whom may be difficult to locate for investigation or deposition purposes. Class members may not be considered traditional parties within the meaning of the discovery rules. The burden of demonstrating the propriety of a class falls on the party proposing the class certification. The proponent's difficulties should not justify elimination of that burden, any more than the opponent's difficulties in disproving class characteristics justify lightening its burden to demonstrate grounds for decertification.

If we assume communication of the same representation to each class member and affirmative reliance by each class member, we might equally assume knowledge and reliance by each class member of any later representations which would eliminate any misunderstanding. Ordinarily the claimant has the burden of proving that the defendant's representation reached the claimant and was relied upon by him. Ordinarily, the

defendant has the burden of proving that any subsequent clarification was communicated to the claimant so as to eliminate any further justifiable reliance. There appears to be no good reason to change one rule while retaining the other. In general, substantive and evidentiary rules should not be adjusted to facilitate a procedural device.

In some *statutory* actions based on fraud, the element of reliance may be inferred or presumed rather than proven by direct evidence. For example, in class actions for securities fraud, individual questions of reliance and the amount of damages are not grounds for refusing to certify a class. Courts focus their inquiry on the materiality of the misstatements made, and if the misstatements are material, the causal relation between the violation and the injury is established. See, *e.g., Mills* v. *Electric Auto-Lite Co.* (1970), 396 U.S. 375; *Affiliated Ute Citizens* v. *United States* (1972), 406 U.S. 128.

The majority creates an inference or presumption of reliance in class actions for common-law fraud, relying on *Vasquez* v. *Superior Court of San Joaquin Cty.* (1971), 4 Cal. 3d 800, 94 Cal. Rptr. 796, 484 P.2d 964. However, there is a significant distinction between *Vasquez* and the present case. In *Vasquez,* the named plaintiffs in a consumer class action alleged that the defendants recited a standard memorized sales statement to every member of the class which contained the misrepresentations upon which they relied. In contrast, the named plaintiff in this case claims that a variety of materials (including sales brochures, models, ownership manuals, and gasoline mileage publications) contained material misrepresentations about the product purchased. It is certainly less clear that every member of the proposed class saw these materials *and* relied upon them in purchasing defendant's automobiles than that customers heard and accepted a stan-

dard memorized sales statement made to every potential purchaser.

Thus, the creation of an inference of reliance in the present case more significantly alters the substantive law of fraud than the California court's action in the *Vasquez* situation. The limits on *Vasquez* were emphasized by the subsequent ruling of the same court in *San Jose* v. *Superior Court of Santa Clara Cty.* (1974), 12 Cal. 3d 447, 115 Cal. Rptr. 797, 525 P.2d 701. In the *San Jose* case, the California court made clear that substantive rules would not be altered to facilitate class actions.

Other courts have been unwilling to create an inference or presumption in order to permit class certification. In *Edelman* v. *Lee Optical Co.* (1974), 24 Ill. App. 3d 216, 320 N.E. 2d 517, an Illinois court denied certification of a class, stating at 219:

"In the instant case, * * * plaintiffs and the members of the class they seek to represent failed to share a requisite common question of fact. Specifically, each count of their complaint is dependent upon proof of reliance by purchasers of single-vision glasses on defendants' alleged misrepresentations. The claim of each member of the class is dependent upon a demonstration that he had knowledge of defendants' advertisements and was led into believing he could purchase any style of single-vision glasses for one low price. Clearly, where plaintiffs' class claims are essentially predicated on an allegation of false and misleading advertising, reliance is an essential element of their case, *yet the class they seek to represent includes persons who may not have relied upon, or even seen, defendants' advertisements*. We believe that a determinative question of fact is not common to the class and therefore this action is not properly maintainable as a class action." (Emphasis added.)

See, also, *Hoffman* v. *Charnita* (M.D. Penn. 1973), 58 F.R.D. 86.

In *Tober* v. *Charnita* (M.D. Penn. 1973), 58 F.R.D. 74, the named plaintiffs in a class action alleged that the defendants violated the Federal Securities Act and committed common-law fraud in the sale of real estate. The court held that the securities fraud action could be maintained as a class action, since individual reliance is not an element which must be separately alleged and proven in such cases. The court then refused certification of the class for the common-law fraud claim, even though separate trials for each class member on the reliance issue would be unmanageable and time-consuming. The court said at 85:

"Nor are we willing to avoid the problem by removing individual reliance as an essential element of common law fraud. To do so, in our opinion, would not only subvert the substantive principles of law involved, but would merely achieve economies of time at the expense of procedural fairness. This latter result is directly contradictory to the purpose of Rule 23(b)(3) as expressed by its authors."

See, also, *Ballen* v. *Anne Storch Internatl. Asti Tours, Inc.* (1974), 46 App. Div. 2d 643, 360 N.Y.Supp. 2d 436.

In my opinion, these cases express the better view, and therefore I disagree with the creation of an inference of reliance in class actions for common-law fraud. I would deny certification of the class in the action for fraud.

I do not dissent from that portion of the opinion in which the majority determined that a class action *could* be maintained under R.C. 1345.09 of the Consumer Practices Act, if a specific administrative regulation is shown to have been violated by the defendant. Like actions under the federal securities laws, proof of each class member's reliance does not appear to be an essential element of an action under this Act. I agree with the analysis regarding actions brought under the Consumer Sales Practices Act in *Brown* v. *Market Development* (1974), 41 Ohio Misc. 57, at 62 [68 O.O.2d 276]:

"It is significant that it is the activity of the supplier that is pivotal in making the determination of unconscionability, and not the character or nature of a completed transaction with a consumer, nor the actual mental state of the consumer."

For the preceding reasons, I believe that certification of the stated class is premature on this record, and that class certification for common-law fraud actions should not be premised on changes in substantive or evidentiary rules, whether they are designated as special assumptions, inferences, or presumptions.