18

CLEVELAND BOARD OF EDUCATION v.
ARMSTRONG WORLD INDUSTRIES, INC.
ET AL.

(No. 070931 — Decided March 26, 1985.)

Court of Common Pleas of
Cuyahoga County.

*Robert E. Sweeney, Russ Smith, John Lloyd* and *Denis Murphy,* for plaintiff.

*Robert G. Quandt,* for defendant Armstrong World Industries, Inc.

JAMES J. MCMONAGLE, J. Plaintiff, Cleveland Board of Education, filed this action on February 15, 1984. On September 24, 1984, fifty-four Ohio public school districts and representatives of the elementary and secondary schools of the Ohio Roman Catholic Diocese sought leave to intervene in the action and join the Cleveland School Board in filing a class action complaint on behalf of all entities which own or operate non-profit elementary or secondary educational facilities within the state of Ohio. (All of these parties are hereinafter referred to as "plaintiffs.")

A third amended complaint, upon which this action rests, brings suit against various defendants who are alleged to be manufacturers, distributors, installers, or otherwise connected with the alleged installation of a variety of friable (easily crushed and therefore hazardous) asbestos-containing products in school buildings located in the state of Ohio. Theories of relief against the sixty defendants include strict liability, negligence and wanton misconduct, breach of express warranty, breach of implied warranty, fraud and misrepresentation, nuisance, restitution, intentional tort, concert of action, enterprise liability and conspiracy. Both compensatory and punitive damages are sought in the amount of $500,000,000, for a total of $1,000,000,000, and such other equitable relief as the court may order.

Plaintiff has filed a motion for class certification pursuant to Civ. R. 23. Plaintiffs have pursued litigation against a majority of the defendants named herein throughout some of the common pleas courts located in the eighty-eight counties in the state of Ohio. These individual plaintiffs, who have also requested relief in other Ohio courts, have filed conditional motions with those courts seeking to have the various actions transferred to this court pursuant to their respective motions to intervene and/or consolidate. There has been minimal discovery conducted in any property damage asbestos case filed in the state of Ohio. Accordingly, intervention and consolidation motions are not seasonable for decision at this time.

A class certification hearing was held on January 12 and 22, 1985, and all parties were provided an opportunity to present any evidence and arguments which they felt supported their respective clients on that question. See *Financial Investment Research & Marketing Agency* v. *Northeastern Ohio Teachers Assn.* (July 10, 1980), Cuyahoga App. No. 41461, unreported; *Belcher* v. *Bassett Furniture Indus.* (C.A. 4, 1978), 588 F. 2d 904; *Shelton* v. *Pargo, Inc.* (C.A. 4, 1978), 582 F. 2d 1298.

The plaintiff's evidence demonstrated that if the actions were certified as a class action, the plaintiff class would consist of six hundred fifteen public school districts, six Roman Catholic Diocesan school boards, and numerous private schools of independent status.

The defendants have either requested this court to deny plaintiff's motion for class certification, or at least to reserve ruling upon the motion because of the establishment of a national class composed of plaintiffs who are similar or identical to these movants.[3]

Before a court can properly certify a class, the plaintiff must establish by a preponderance of the evidence that all of the necessary requisites of Civ. R. 23 are satisfied. *Grubbs* v. *Rine* (C. P. 1974), 39 Ohio Misc. 67 [68 O.O.2d 234]; *Gilmore* v. *General Motors Corp.* (1973), 35 Ohio Misc. 36 [64 O.O.2d 180]; *Life of the Land* v. *Land Use Comm.* (1981), 63 Haw. 166, 623 P. 2d 431, 443.

The class certification determination does not necessarily have any relationship to the factors which may be determinative of the substantive merits of a lawsuit. See *Amato* v. *General Motors Corp.* (1982), 11 Ohio App. 3d 124, 126; *Ojalvo* v. *Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St. 3d 230, 233; *Eisen* v. *Carlisle & Jacquelin* (1974), 417 U.S. 156, 177-178.

The allegations of the complaint may be taken as true and the merits not examined in a certification hearing. *Allen* v. *Isaac* (N.D.Ill. 1983), 99 F.R.D. 45, 49.

The Supreme Court of Ohio has recently commented upon the operation of Civ. R. 23, stating:

"Civ. R. 23 provides that, under the

proper circumstances, one or more litigants may in a single proceeding represent the interests of a large class of persons similarly situated. In order to maintain a class action, all the requirements of Civ. R. 23(A), as set forth below, must be satisfied:

" 'One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.' " *Vinci* v. *American Can Co.* (1984), 9 Ohio St. 3d 98, 99.

In addition to these four conditions, at least one of the requirements contained in Civ. R. 23(B) must be satisfied. *Shibley* v. *Time, Inc.* (1975), 45 Ohio App. 2d 69 [74 O.O.2d 101]; *Miles* v. *N. J. Motors* (1972), 32 Ohio App. 2d 350 [61 O.O.2d 518].

Plaintiff seeks to have the class certified under Civ. R. 23(B)(3), which provides that a class action may be maintained if:

"the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. * * *"

A trial court's determination that a case may proceed as a class action will not be disturbed absent an abuse of discretion.[4] *Vinci* v. *American Can Co., supra,* at 99.

---

[3] The latter request is based upon *In re Asbestos School Litigation Master File No. 83-0268* (E.D. Pa.), hereafter referred to as *"National Class Action."*

[4] "Judicial discretion is the option which

a judge may exercise between the doing and not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and conscience of the judge, to a just result in the light of the

Therefore, this court will initially discuss the class certification prerequisites of Civ. R. 23(A) in the order in which the rule presents them:

(1) *Numerosity.* There can be no serious legal question that the plaintiffs sustain their burden on this section of Civ. R. 23.

The evidence adduced at the oral hearing showed that the named plaintiffs seek to bring this action on behalf of themselves and on behalf of all entities which own or operate non-profit elementary and secondary educational facilities within the state of Ohio. The class would consist of six hundred fifteen public school districts, six Roman Catholic diocesan school districts, and a handful of privately operated elementary and secondary schools. Together, the class members operate approximately four thousand six hundred school buildings and educate approximately 2,073,000 children.

Clearly, such a great number of plaintiffs would render joinder of all class members impractical. In *Vinci* v. *American Can Co., supra,* the Ohio Supreme Court recognized that Civ. R. 23(A)(1) allows for a certain amount of flexibility in determining whether a proposed class is sufficiently numerous to render joinder impracticable. In that case, the court upheld an order of the trial court finding that a class consisting of sixty-eight members satisfied the numerosity requirement. Therefore, the numerosity requirement is certainly fulfilled herein.

(2) *Common questions of law or fact.* Wide discretion is afforded trial courts in deciding this issue, *Caruso* v. *Celsius Insulation Resources, Inc.* (M.D. Pa. 1984), 101 F.R.D. 530, 533, but its resolution may be satisfied by the allegations contained in the complaint. *Miles* v. *N.J. Motors, supra,* at 356. The re-

particular circumstances of the case." *Krupp* v. *Poor* (1970), 24 Ohio St. 2d 123 [53 O.O.2d 320], paragraph two of the syllabus.

quired analysis is directed toward whether or not the damages flow "from a common nucleus of operative facts." *Id.* This question of commonality in an identical case was discussed by Judge James McGirr Kelly in the *National Class Action* slip opinion at 13, and is approved and followed by this court:

"Plaintiffs alleged a number of claims involving both legal and equitable relief. The predicate of each claim is a violation of law, or breach of legal duty, which, in conjunction with a showing of injury causally linked to defendants' wrongful conduct, creates liability to the members of the class. Although each claim is grounded in the breach of a separate, independent duty owed the individual members of the class, the underlying 'common core of questions,' *Cohen* v. *Uniroyal, Inc.,* 77 F.R.D. at 690, which plaintiffs contend make out a *prima facie* case of breach of a legal duty under the theories of liability specified in the complaint, are as follows:

"(a) the general health hazards of asbestos;

"(b) defendants' knowledge or reason to know of the health hazards of asbestos;

"(c) defendants' failure to warn/test; and

"(d) defendants' concert of action and/or conspiracy involving formation of and adherence to industry practices.

"All of these elements can be established by common proof, which, although it may be complex, does not vary from class-member school to class-member school. Plaintiffs have demonstrated common questions sufficient to satisfy Rule 23(A)(2)."

A complete identity of all claims is not required (*Miles* v. *N.J. Motors, supra*), for such a prerequisite would extinguish any rational justification of Civ. R. 23. Professor Moore explained the theory best by saying:

"Where courts have considered

23(a)(2), they have noted that the rule does not require that *all* questions of fact and law be common, but only demands that a question of law *or* fact be presented which is shared in the grievances of the prospective class as defined." 3B Moore's Federal Practice (1985), Paragraph 23.06-1, at 23-173.

Commonality is therefore satisfied.

(3) *Typicality.* This provision has recently been commented upon in *Vinci* v. *American Can Co., supra,* wherein our Supreme Court held that if the claims of the representative plaintiffs are actionable and similar to those of the class the plaintiffs desire to represent, even though the claims are "analytically independent inquiries," *Vinci, supra,* at 100, they still may be typical of the claims of the class and, therefore, be recognizable under Civ. R. 23(A)(3).

No uniform definition of "typicality" has been developed in the courts of this state or in the plethora of federal decisions this court has reviewed. "Typical" has been held to mean a "lack of adversity between the class members." *Tober* v. *Charnita, Inc.* (M.D. Pa. 1973), 58 F.R.D. 74, 80. Our rule requires that the "claims" are typical of the class.

The plaintiffs, in a uniform manner, claim they have been damaged because their educational buildings are contaminated with hazardous asbestos-containing products due to each defendant's activities. The claim of the Cleveland School Board is not only representative, but generally identical to the claims of the other potential class members.

The law refers to this issue in a similar manner as it refers to Civ. R. 23(B)(3), and the commentators are in accord:

"* * * [A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory." 1 Newberg, Class Actions (1977) 185, Section 1115 b.

The claim of the representative plaintiff is typical of the claims of the class members insofar as all members of the proposed class seek recovery from the defendants based upon the same theories of relief in order to recover for similar types of harm.

The argument has been made that the distinct defenses available to each individual defendant prohibit certification under this section of Civ. R. 23. However, by certifying the class, no defendant loses any defense or right that was previously available to it.

This case is for the certification of the plaintiffs as a class, and not for certification as to the fact that any individual defendant is liable under any theory asserted against it. Civ. R. 23 does not decrease a plaintiff's burden; it only makes it more economical for it to present its case. Class certification does not abolish motions to dismiss, motions for summary judgment, or motions for a directed verdict, or any other defense by any individual defendant. Typicality is satisfied.

(4) *The representatives claiming for the class must fairly and adequately protect the class interest.* This requirement is determined by the following factors:

(a) the qualifications and experience of plaintiff's attorney and his ability to conduct the litigation; and

(b) the likelihood that plaintiffs are involved in a collusive suit or that plaintiff has an interest adverse to those of the remainder of the class. *Eisen* v. *Carlisle & Jacquelin* (C.A. 2, 1968), 391 F. 2d 555, 562; *Miles* v. *N. J. Motors, supra,* at 356-357.

In *Vinci* v. *American Can Co., supra,* the Ohio Supreme Court stated the following at 101 with respect to the adequacy-of-representation requirement:

" 'This requirement [Civ. R. 23 (A)(4)] is satisfied where plaintiff's counsel is able and experienced and where there is no danger of a collusive

suit potentially detrimental to the rights of the class * * * [citations omitted].' * * *"

No evidence of collusion between the proposed class representatives and the defendants nor any dissatisfaction with the representative party has been brought to this court's attention. The proposed class representatives all have an interest in seeing to it that the maximum amount of recovery be obtained for themselves and the class in order that they may remedy the asbestos-affected buildings they are responsible for maintaining and operating.

As for professional competency, the court has already recognized class counsels' proficiency in its previous ruling on a Motion to Appoint Lead Counsel Committee. This court also recognizes the professional ability of each defense counsel.

### Civ. R. 23(B) Requirements

Assuming *arguendo* that all of the requirements of Civ. R. 23(A) have been satisfied, then it is necessary to determine whether or not the action is properly maintainable under one of the three separate subdivisions of Civ. R. 23(B).

Plaintiff seeks certification of a voluntary class pursuant to Civ. R. 23(B)(3). Therefore, there shall be no discussion of the other provisions.

Under Civ. R. 23(B)(3), a matter cannot proceed as a class action unless "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, *and* that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This section of the rule further provides guidelines for the determination of this question:

"The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."

Predominance will determine whether or not to certify this class. Therefore, there is a need to identify the issues that will be presented in order to analyze the appropriateness of a class certification ruling. *Abercrombie* v. *Lum's, Inc.* (S.D. Fla. 1972), 345 F. Supp. 387.

A large part of the proof in this case concerns the presentation of damage evidence for each school building. The individualized determination of damage of each member does not alone prohibit a class certification. *Vinci* v. *American Can Co., supra.* Class members in this case, however, are comprised of parts and not entities. In actuality, each class member is a building and not a school board. Legally, this distinction prohibits class certification.

The school districts throughout the state are now endeavoring to comply with the federal mandate to identify and abate the existence of friable asbestos in school buildings. See 47 Fed. Reg. 23360 (May 27, 1982). The Environmental Protection Agency defines "friable" as something which can be reduced to powder by use of hand pressure; and friable asbestos, consequently, has the capability of giving off airborne fibers. Those fibers may create an unwarranted hazard to the health of school children and this is the compensable theory upon which the plaintiffs hope to recover. Asbestos can become friable when it is damaged by age, mischief, water or other forces. Identical applications of an asbestos-containing product may be legally defective in one building but not

in another.[5] Also, one defendant's product, because of its use or location, may become friable in one room of a building, but remain without a hazardous defect in another area of the same structure.

Some defendants named herein are asbestos manufacturers, some are distributors and some are asbestos installers. Their liability is different, depending upon their function. Different warranties no doubt were expressed by the various defendants, and the reliance of the respective plaintiffs would vary from instance to instance. A defense (*e.g.*, statute of limitations, successor liability, or comparative negligence) may be available to one defendant as to one school building only. Superseding and intervening causes may exist in the factual history of the case in any number of the fifty-four school districts. Fraud may or may not play a role; but, if it does, its proof will require specific and individualized allegations. An oft-cited asbestos-related case characterized the basic problem in the following way:

"* * *There is not a single act of negligence or proximate cause which would apply to each potential class member and each defendant in this case." *Yandle* v. *PPG Industries, Inc.* (E.D. Tex. 1974), 65 F.R.D. 566, 571.

All of plaintiff's theories must comply with our basic understanding of proximate cause. Even though the focus of products liability is upon the product as opposed to the defendant's conduct, this issue can vary from school district to school district and from building to building. Negligence, wanton misconduct, fraud and misrepresentation, restitution, intentional tort and the other of the plaintiff's claims all require proof of proximate causation. The mere presence of a legally "defective" product in an educational facility is not compensable. See 34 C.F.R., Section 231, Appendix B, 46 Fed. Reg. 4544 (January 16, 1981).

Surely, we as parents wish to remove all potential harm to the school children, and this ruling does not diminish that desire. We are only deciding whether or not the joining together of these potential plaintiffs, that request compensation for legally required removal of asbestos-containing material which can proximately cause an unreasonable danger (see Restatement of the Law 2d, Torts [1965] 347-348, Section 402A[1]) to our children, is legally viable under Civ. R. 23.

Cause under each theory relies upon a particular set of facts depending upon each individual plaintiff's buildings' peculiar circumstances. A rigorous analysis of plaintiff's theories results in the following separate fact and law determinations against each individual defendant, even if taken in the light most favorable to the plaintiff:

1. *Strict Liability:*

(a) Did each individual defendant manufacture its asbestos-containing material?

(b) Was the asbestos-containing material defective, unreasonably dangerous and not of a good and merchantable quality and not fit or safe for the ordinary or intended use?

(c) Was each defendant's asbestos-containing material defective when it was manufactured by that defendant?

(d) Was each defendant's asbestos-containing material expected to, and did

---

[5] "* * * For example, an auditorium with a sloping floor might have a section of the ceiling that is accessible and shows marks caused by vandalism, while other sections, beyond reach, remain unmarked. After the evaluator applies the guidance system specifically to that section of damaged ceiling, the evaluator might find that it might be the *only* portion of the ceiling requiring direct corrective action." 34 C.F.R., Section 231, Appendix B, 46 Fed. Reg. 4536, 4544 (January 16, 1981).

it reach, the ultimate consumer without substantially changing its condition?

(e) Could each defendant reasonably have anticipated and foreseen the plaintiff's use of an exposure to its asbestos-containing material and the resulting property damage? and

(f) Did each defendant's defective asbestos-containing material proximately cause damage to plaintiff's buildings?

Under any case involving products liability, the inquiry always encompasses the issue of what was the "state of the art" and, also, the issue of what statute of limitations is to be imposed on each plaintiff. In this connection, a jury is instructed that whoever undertakes to manufacture a product for sale and use by others is held to the skill of an expert in that business and the expert's knowledge of the arts, materials and processes involved in the development, production and marketing of that product. The manufacturer, seller, or distributor is also imposed with the duty of communicating its superior knowledge to those who, because of their own limited knowledge and information, would otherwise be unable to protect themselves while using the product. *Doan* v. *Johns-Manville Sales Corp.* (1982), Cuyahoga C.P. No. 008534, unreported. Failure to warn under these circumstances is negligence. *Hardiman* v. *Zep Mfg. Co.* (1984), 14 Ohio App. 3d 222. Under the outline set out above, it is easy to see the uncommon factors appearing in this class action dilemma. The duty to warn and the degree of adequacy of the warning increase with the growth and development of the "state of the art." What warning should be required for the materials in a 1910 structure as opposed to a 1960 structure? What duty should be imposed upon a multi-million dollar, world-wide asbestos manufacturer versus a state-wide installer of asbestos-containing products? The law recognizes a constantly changing state of the art and,

therefore, a necessary growth in the sensitivity of adequate warnings. In addition, the plaintiff-school districts themselves should be held to possess more knowledge about the asbestos hazard as modern science has developed and disseminated information.

2. *Negligence and Wanton Misconduct:*

(a) Did the state of medical science, technical research and knowledge reach such a stage of development that would have made a reasonably prudent manufacturer, seller or installer aware of the unreasonable danger inherent in the use of the product?

(b) Did the manufacturer, seller or installer fail to warn the foreseeable user or consumer of that product against such risks and hazards?

(c) Were the warnings adequate in consideration of the state of the art at the time?

3. *Express Warranty:*

(a) Was there a warranty?

(b) What reliance was reasonable? See *In re Northern Dist. of Cal. Dalkon Shield, Etc.* (C.A. 9, 1982), 693 F. 2d 847, 856.

4. *Fraud:*

(a) Individual reliance. See *Amato* v. *General Motors Corp.* (1982), 11 Ohio App. 3d 124; *Bogosian* v. *Gulf Oil Corp.* (E.D. Pa. 1973), 62 F.R.D. 124, 134-135.

And the list goes on.

A LEGALLY COMPENSABLE DAMAGE TO ONE ASBESTOS-CONTAINING EDUCATIONAL BUILDING DOES NOT PROVE, NOR DISPROVE, A LEGALLY COMPENSABLE DAMAGE TO ANOTHER ASBESTOS-CONTAINING EDUCATIONAL BUILDING.

The second prong of Civ. R. 23(B)(3) deals with an examination of the asserted superiority of the class action over other available methods of adjudication. "Superiority" in this context means "more advanced or higher, greater or more excellent than another

in any respect." *Webster's Twentieth Century Dictionary* (2 Ed.). Stated otherwise, it means economy, efficiency, and ease of handling.

This court has been uniquely involved in asbestos-related claims, not only in the trial of the first lawsuit after Johns-Manville filed for protection under the bankruptcy rules, but also in the disposition of all of the asbestos cases in this jurisdiction. Therefore, this court is indeed capable of evaluating the superiority of a class action in the context of asbestos claims.

In the course of proving its own claim, plaintiff must also prove the claims of the other members of the class. *McElhaney* v. *Eli Lilly & Co.* (D.S.D. 1982), 93 F.R.D. 875, 878. The Advisory Committee Note to Fed. R. Civ. P. 23(b)(3) refers to a "mass accident," but its logic holds true to a case of this type:

"A 'mass accident' * * * is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways. In these circumstances, an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried. * * *" 28 U.S. Code Ann., Rule 23, Notes of Advisory Committee on Rules, 1966 Amendment, at 54.

This court is compelled to examine the potential for economy of effort and efficiency of management. For the potential plaintiffs to sustain their evidence, they must have four thousand six hundred separate and independent building appraisals, and each defendant would be permitted to cross-examine on each appraisal. Simple arithmetic would permit a nightmarish scenario of three hundred thousand different examinations on this limited issue. Impossible? No! Impractical? Yes!

The Ohio Civil Rules provide for three peremptory challenges for each party in a lawsuit.[6] Since the defendants will undoubtedly assert that they represent almost sixty individually adverse positions, the defense side alone will exercise one hundred eighty peremptories. Jury selection will be tedious, protracted and frustrating.

Due to the varying fact patterns within the class, limiting instructions to the jury will be increasingly necessary to prevent prejudice to all defendants from evidence brought in against a few. But, then, how can a court unring the bell?

It is difficult to fathom the intellectual burden that would be placed upon the average juror, much less the imposition of asking a juror to serve in the courtroom, for over a year or more.

"* * * [T]he notion of utilizing a jury trial in a class suit containing the varied problems certain to abound herein, is enough to chill any further discussion of the required superiority of a class claim over other available methods for the fair and efficient adjudication of the controversy. Such a trial, whether one trial or the multiple mini-trials probably required, would withdraw from all other usefulness for years to come the judicial personnel involved. Where one could muster jurors willing to devote themselves so indefinitely in time from their accustomed tasks, is puzzling. One might relevantly ask—what public interest would be served by devoting the public's facilities in this way and what just purpose requires such colossal marshalling of judicial resources and their supporting personnel?" *Schaffner* v. *Chemical Bank* (S.D. N.Y. 1972), 339 F. Supp. 329, 337.

This court must be mindful, also, of the clear and present existence of a national class, and of the reality that the Civil Rules contemplate the creation of a sub-class, since considerable reflection demonstrates to this court that the ex-

_____

[6] Civ. R. 47(B).

pense of individual litigation will not be avoided by the creation of a class in this forum. If the national class is not pursued, then the trial of the Cleveland School Board case in an expeditious manner will establish *stare decisis* for future disputes.

The invitation to declare a multi-plaintiff, multi-defendant and multi-product class creates an allure of a legal paradise where we all may picnic together. This vision seems attractive from afar, but upon closer inspection, is a quicksand upon which this court will not venture, for the result of such a step would be fear, panic, and confusion.

If and when the instant denial of class certification is appealed, this court will insist upon retaining jurisdiction at least as regards pretrial discovery. Friable asbestos abatement measures have been proceeding, and they should be continued and judicially monitored. This court recognizes its responsibility and continues to seek a remedy to the grave problem posed by asbestos.

"[T]he presence in school buildings of friable or easily damaged asbestos creates an unwarranted hazard to the health of the school children and school employees who are exposed to such materials." Asbestos School Hazard Abatement Act of 1984, Pub. L. No. 98-377, Section 502 (a)(6), 98 Stat. 1287, 1288 (1984), 98th Cong., 2d Sess., reprinted in 1984 U.S. Code Cong. & Ad. News, Sept. 1984.

The potential danger of friable asbestos in educational facilities cannot be minimized or ignored. Consequently, this court will remain vigilant, will pursue every available avenue within the constraints of the judicial system, and will endeavor to bring the asbestos litigation before it to a fair and satisfactory resolution.

Motion for class certification denied.

*Motion denied.*