[Nos. 43582-5-I; 43648-1-I. Division One. August 14, 2000.]

FRANCINE PICKETT, ET AL., *Respondents*, LEONARD BEBCHICK, *Appellant*, JOSEPH HESS, ET AL., *Intervenors*, v. HOLLAND AMERICA LINE – WESTOURS, INC., *Respondent*.

902

*Leonard N. Bebchick*, pro se.

*James F. Whitehead III* (of *Holmes, Weddle & Barcott*), for intervenors.

*Steve W. Berman, George W. Sampson,* and *Keri L. Greenheck* (of *Hagens Berman L.L.P.*); and *Dan Drachler, Stephen M. Rummage,* and *Jason C. Klein* (of *Davis Wright Tremaine*), for respondents.

APPELWICK, J. — Plaintiffs filed a class action lawsuit under the Washington Consumer Protection Act (Washington CPA) alleging that Holland America misrepresented "port charges and taxes" assessed as a pass through of government charges, taxes, and fees to customers purchasing cruise tickets. Plaintiffs' motion for certification of the class was denied on the basis of individual choice of law questions, and on the basis of individual issues of causation and injury predominating over common issues. A "class" was certified for settlement purposes only. Plaintiffs reached an agreement on a proposed settlement with Holland America that provided plaintiffs vouchers for discounts on future cruise tickets and required Holland America to make assurances of voluntary compliance of certain advertising practices. One member of the class moved to intervene, and appealed the trial court's initial denial of class certification and challenged the fairness of the proposed settlement. Holland America appealed the denial of its summary judgment motion that asserted the untimely filing of the lawsuit. We find that Washington law applies to the plaintiffs' claims. The lawsuit was timely filed and Holland America's motion for summary judgment was properly denied. Levy of mandatory, add-on "port charges and taxes" on passengers was part of a common scheme. Holland America charged amounts in excess of actual port charges and taxes and kept a portion of the funds for corporate purposes. The causation and damages require-

ments of a Washington CPA action inhere in the fact that plaintiffs purchased the cruise tickets. Common issues of causation and damages predominate over individual issues. We reverse the denial of class certification. We conclude that the settlement agreement is not fair and reasonable in light of our reversal of the denial of the class action certification of the Washington CPA claim. We therefore remand for further proceedings.

## FACTS

Defendant-Respondent Holland America Line–Westours, Inc. (Holland America or HALW) is a Seattle, Washington, corporation that provides cruises within and between the United States, international waters, and foreign jurisdictions. Plaintiffs-Respondents Francine Pickett, Brian Cohen, Jack Masin and Belle Masin are representatives of a nationwide class of cruise passengers. Plaintiffs all traveled on a Holland America cruise and paid "port charges and taxes."

Plaintiffs filed a class action suit on April 19, 1996, on behalf of all persons who had traveled on a Holland America cruise in the preceding four years and paid "port charges and taxes" included in the cruise price. Plaintiffs claimed that Holland America's marketing literature and cruise contract misrepresented the nature of the "port charges and taxes" assessment. The complaint alleged Washington CPA violations, negligent misrepresentation, and unjust enrichment. Plaintiffs alleged that Holland America represented the assessments as mandatory taxes and fees levied by port authorities and governmental agencies, when in fact, the assessments were knowingly and deliberately collected and kept by Holland America for corporate purposes. Plaintiffs sought recovery of the "port charges and taxes" charged by Holland America in excess of the actual port charges and taxes assessed by the ports or governments.

On July 24, 1996, Holland America moved for partial summary judgment, asserting that the suit was time

barred by the cruise contract's limitations period. On October 31, 1996, Judge Armstrong of the King County Superior Court denied that motion finding that Washington law, not maritime law, applied. Judge Armstrong stated that the "factual record is not sufficiently clear to determine whether plaintiffs knew or reasonably should have known what the port charges and taxes were." The court deferred a ruling on certification.

Holland America petitioned for discretionary review. Commissioner Kallas denied review on February 20, 1997, on the grounds that plaintiff Pickett had strictly complied with the terms of Holland America's contractual limitation, and that her filing would satisfy the contractual limitation for all plaintiffs, if the class were certified for trial.

Plaintiffs renewed their motion for class certification. Plaintiffs filed a supplemental brief in support of class certification in May 1997, seeking certification only of their Washington CPA claim. The case was transferred to Judge Jay White of the King County Superior Court. On September 22, 1997, Judge White denied class certification finding that: (1) adjudication requires the court to engage in individual choice of law analysis; (2) individual issues as to causation and injury predominated over common class issues; and (3) the question whether the contractual limitations period bars the plaintiffs' claim raises individual issues that predominate over common questions.

Plaintiffs petitioned for discretionary review of the superior court order denying their motion for class certification. Plaintiffs argued that causation may be shown by merely proving that defendant's conduct had a capacity to deceive a substantial portion of the public. Commissioner Kallas denied the motion on January 22, 1998. Commissioner Kallas reasoned that in a Washington CPA action based on misrepresentation, reliance must be shown to prove causation.

Holland America again moved for summary judgment on January 28, 1998. Before the court ruled on the motion, the plaintiffs and Holland America reached a settlement. The

settlement required that the trial court certify the class for settlement purposes only. The settlement stipulated that the plaintiffs receive vouchers discounting future Holland America cruises in exchange for release of their claims. The settlement also required that Holland America enter into an Assurance of Voluntary Compliance with the Florida Attorney General regarding advertising methods throughout the United States.

A voucher's value depends on the year that the member traveled and the duration of the cruise. Voucher amounts range from $10 to $50, and may be applied against the lowest fare available. The vouchers are valid for three years from the date of issuance, but may be used only for bookings made within forty-five days of departure. The vouchers do not have a cash redemption value, but are fully transferable. The vouchers may be stacked up to $50 for seven to fourteen day cruises and up to $100 for cruises of fifteen days or longer.

On April 21, 1998, the trial court provisionally certified a class for settlement purposes and preliminarily approved the settlement. Additionally, the court ordered that notice be sent to putative class members of the settlement and advising of their rights to opt out, object, and attend the fairness hearing. Over 470,000 notices were sent to approximately 750,000 potential class members. Fewer than fifty objected to the proposed settlement. Of these, about a dozen wrote in support of Holland America. Leonard Bebchick was one of the recipients of the notice. Bebchick objected to the settlement claiming it was unfair, inadequate and unreasonable.

On October 5, 1998, the trial court conducted a fairness hearing to consider whether to approve the proposed settlement. The court heard argument from Bebchick and other objectors. The trial court approved the settlement as fair and reasonable. Bebchick moved to intervene as an individual class member plaintiff for the purposes of seeking appellate review of the court's approval of the settlement

and its denial of class certification. The petition was granted on reconsideration.

## ANALYSIS

Whether the trial court properly denied class certification to plaintiffs' Washington CPA action and properly approved the settlement agreement turns on four issues: (1) the choice of law of the plaintiffs' claims; (2) whether the suit was timely filed under the contractual limitations period; (3) whether damages and causation can be proven in a class action; and (4) whether the settlement agreement was reasonable.

Choice of Law

We must first determine what is the governing law. Bebchick contends that the trial court erred in finding that the plaintiffs' claims would require an individual choice of law analysis to determine the governing law.

First, Bebchick argues that Washington law governs because it is the express choice of law under the cruise contract. He claims that Judge Armstrong's order denying Holland America's summary judgment motion established that Washington law governed. Plaintiffs and Holland America entered into a cruise contract that stipulated terms and conditions. Paragraph fifteen provided terms regarding the governing law:

> As to Cruises and as to the Ship segment of your Cruisetour, it will be construed in accordance with the general maritime law of the United States. As to the non-Ship segment of your Cruisetour, it will be construed in accordance with the laws of the State of Washington, U.S.A. All disputes and matters whatsoever arising under, in connection with or incident to this contract shall be litigated . . . in the courts of the State of Washington, U.S.A., to the exclusion of the courts of any other state or country.

In denying Holland America's summary judgment motion, Judge Armstrong found that "the gravamen of plaintiff's claim is the alleged unfair and deceptive conduct which

induced plaintiffs to enter into a contract. The alleged conduct did not concern the cruise or the ship segment of the cruise tour and is therefore . . . governed by the law of Washington."

██ Second, Bebchick contends that Washington law governs even if we apply a choice of law analysis. In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985), the Supreme Court addressed the requirements for the forum state's substantive law to govern common issues in a nationwide class action. The Court held that the forum state must have " 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of . . . law is not arbitrary or unfair." *Shutts*, 472 U.S. at 821-22 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13, 101 S. Ct. 633, 639-40, 66 L. Ed. 2d 521 (1981)). In *Baffin Land Corp. v. Monticello Motor Inn*, 70 Wn.2d 893, 899, 425 P.2d 623 (1967), the Washington State Supreme Court adopted the significant relationship test to determine the contract choice of law. Therefore, the law of the state that has the most significant relationship with the contract governs the validity and effect of the contract. *Baffin Land Corp.*, 70 Wn.2d at 899. The court stated that the "rule we approve here also gives much more emphasis to the desires and expectations of the parties, as the state with the most significant relationship is the state chosen by the parties, if an actual, valid choice is made." *Baffin Land Corp.*, 70 Wn.2d at 899.

Holland America claims that individual issues predominate over common issues because individual choice of law analysis is required for each plaintiff. Holland America relies on several cases in arguing that individual choice of law issues predominate. In *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1011, 1016 (D.C. Cir. 1986), *cert. denied*, 482 U.S. 915 (1987), a district court conditionally certified a class of plaintiffs in an action under the Magnuson-Moss Warranty Act, finding that individual choice of law issues did not

predominate where the federal Act alone covered the class members claims. The Court of Appeals vacated the class certification, holding that the federal Act only supplemented state law and did not alone cover the class members claims. Therefore, the application of varying state law was required. *Walsh*, 807 F.2d at 1011-12. In *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996), the Court of Appeals decertified a class action brought by plaintiffs against tobacco companies. The court found that individual choice of law issues predominated in a diversity class action asserting eight causes of action, including the novel tort of nicotine addiction.[1] *Castano*, 84 F.3d at 744.

■ Here, the class certification is based on one cause of action, the Washington CPA. The application of this law is not complicated by any state law variations or multiple causes of action as are the cases relied on by Holland America. Therefore, we agree with Judge Armstrong that the cruise contract's choice of law is Washington. Holland America provided in its contracts that Washington law applied to non-ship segments of the cruise tour and that venue was exclusively in Washington. Plaintiffs entered into contracts containing those terms. Plaintiffs accepted the terms for substantive choice of law and for venue, and filed their lawsuit in King County, Washington, in compliance with those terms. Plaintiffs' claims as amended are solely for certification of a class action for purposes of damages arising from Holland America's violation of the Washington CPA. Plaintiffs' claims accept and invoke Washington State law.

Whether or not the class is certified, the result is that there is no choice of law issue. Potential class members who do not accept certification of the class for the limited

---

[1] Holland America cites other cases that were complicated by the application of various causes of action involving the laws of many states: *Andrews v. AT&T*, 95 F.3d 1014 (11th Cir. 1996) (asserting a federal RICO (Racketeer Influenced and Corrupt Organizations Act) claim, violations of gaming laws of many states and fraudulent misrepresentation); *In re American Med. Sys.*, 75 F.3d 1069 (6th Cir. 1996) (asserting state law claims of strict liability, negligence, fraudulent misrepresentation, failure to warn and breach of warranty); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir. 1996) (asserting eight different causes of action).

purpose of the Washington CPA may opt out of the class. Should decisive numbers opt out, the court may reconsider the certification of the class. However, as the case was pleaded, Washington law[2] would apply to the claim of every member of the plaintiff class.

We find that the trial court abused its discretion in denying class certification on choice of law grounds. Having reached this result, we need not address the argument that Holland America was estopped to deny its contract choice of law provision and to assert that individual choice of law questions prevail.

Contractual Limitations Period

Holland America contends that the plaintiff class did not comply with the contractual limitations period. The cruise contract provided time limits for noticing claims and filing lawsuits against Holland America. Paragraph two states that lawsuits against Holland America, based on claims not governed by 46 U.S.C. § 183b, may not be maintained unless Holland America "is provided with written notice of claim within thirty (30) days after conclusion of the Cruise or Cruisetour, the lawsuit for such claim is commenced not later than one hundred eighty (180) days after conclusion of the Cruise or Cruisetour. . . ." Holland America claims that the contractual limitations period is enforceable.

■ In denying discretionary review of Judge Armstrong's order, Commissioner Kallas relied on *Yollin v. Holland America Cruises, Inc.*, 97 A.D.2d 720, 468 N.Y.S.2d 873 (1983), where the trial court denied class certification of plaintiff's claims. In *Yollin*, the plaintiff had commenced the action within the contractual limitations period, but the trial court found that all other passengers were time barred from commencing an action and were therefore precluded from membership in the proposed class action. *Yollin*, 97

---

[2] Because Washington law governs, this is a consumer contract, not a maritime contract. All terms are given their plain meaning as understood by the public at large. Therefore, Holland America's claim that "port charges" as understood in maritime law are more than government charges, constituting a variety of port related expenses, has no place here.

A.D.2d at 720. Although the appellate court upheld the denial of certification on other grounds, it held that the "timely commencement of the action by plaintiff herein satisfied the purpose of the contractual limitation period as to all persons who might subsequently participate in the suit as members of a class." *Yollin*, 97 A.D.2d at 720 (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551, 94 S. Ct. 756, 765, 38 L. Ed. 2d 713 (1974)). The commencement of a class action "suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipeline*, 414 U.S. at 554.

Here, class representative Pickett complied with the contractual limitations period and, therefore, satisfies the contractual limitations for all other plaintiffs properly within the class. Pickett's cruise with Holland America concluded on January 20, 1996. The complaint was filed less than 180 days later, on April 19, 1996. Under *American Pipeline*, the commencement of the original lawsuit tolls the running of the statute of limitations for all members who make timely motions to intervene. *American Pipeline*, 414 U.S. at 553. The statute remains tolled for all members of the putative class until class certification is denied. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983). The designated plaintiff class coincides with those purchasing within the contractual limitations period.

Furthermore, because Washington law applies, the time limits are not strictly enforceable. "An action for relief upon the ground of fraud, the cause of action in such case not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." RCW 4.16.080(4). This rule has been applied to the Washington CPA's limitation provision. *Reeves v. Teuscher*, 881 F.2d 1495, 1501 (9th Cir. 1989). Judge Armstrong ruled that "the plaintiff must have an opportunity to reasonably discover the elements of his cause of action. The factual record is not

sufficiently clear to determine whether plaintiffs knew or reasonably should have known what the port charges and taxes were." Even if Pickett had not timely filed her claim within the contractual limitations period, the limitations period is not strictly enforceable because Washington's discovery period applies.

We hold that Pickett complied with the contractual limitations period and, therefore, saved the claim for the plaintiff class. A Washington CPA action carries a four-year statute of limitations. RCW 19.86.120. The designation of the plaintiff class also complied with and encompassed only the statute of limitations period. The summary judgment sought by Holland America was properly denied. The trial court abused its discretion by concluding that individual questions predominated over common questions with respect to contractual limitations.

Class Certification

We next turn to whether the requirements for class certification were met. The trial court denied the motion for certification of plaintiffs' Washington CPA claim on the additional grounds that individual issues of injury and causation predominate over common questions.

Bebchick assigns manifest error to the trial court's findings. He argues that causation and injury flow inexorably from Holland America's deceptive act. Bebchick contends that the factor of individual causation, as envisioned by *Hangman Ridge*, is not meaningful in this case where the deceptive act is allegedly not a material factor in the consumer's purchasing decision. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986). He argues that the mere purchase of a cruise is evidence of causation. Bebchick urges the court to adopt a standard for causation that governs class actions under the Washington CPA. Otherwise, the ability to bring an action against Holland America, where individual loss is not high, is effectively lost.

Holland America claims Bebchick puts the cart before the

horse. Holland America contends the issue of certification for trial is moot if the settlement is affirmed. Holland America argues that even if the settlement were invalid, the individual issues in the case predominate over the common ones. Holland America presents deposition testimony that demonstrates plaintiffs' lack of knowledge of "port charges and taxes" when purchasing cruise tickets. Holland America argues that ignorance of the "port charges and taxes" precludes a finding of causation because the plaintiffs' could not rely on the alleged deceptive practices. In short, Holland America contends that there is no cause of action to base a class action upon.

■ A decision on class certification rests in the sound discretion of the trial court and cannot be overturned absent an abuse of discretion. *Lacey Nursing Ctr., Inc. v. Department of Revenue*, 128 Wn.2d 40, 47, 905 P.2d 338 (1995).

■ Civil Rule (CR) 23(a) requires that a class action: (1) consist of members of a class that are so numerous that joinder is impracticable; (2) possess common question of law or fact; (3) contain typical claims or defenses; and (4) that the representative parties fairly and adequately represent the interests of the class. In addition, a class action must also meet the requirements of CR 23(b)(1), (2) or (3). *Lacey Nursing*, 128 Wn.2d at 47. CR 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . . ." The specific requirements set forth in CR 23 must be met before a class is certified. *Lacey Nursing*, 128 Wn.2d at 47; *DeFunis v. Odegaard*, 84 Wn.2d 617, 622, 529 P.2d 438 (1974).

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful under the Washington CPA. RCW 19.86.020. "Any person who is injured in his or her business or property by a violation of RCW 19.86.020 . . . may bring a civil action . . . to recover the actual damages sustained . . . ." RCW 19.86.090. The purpose of the Washing-

ton CPA is to protect the public and foster fair competition, and it "shall be liberally construed that its beneficial purposes may be served." RCW 19.86.920.

■ The following elements are required for a plaintiff to establish a private cause of action under the Washington CPA: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986); *Eriks v. Denver*, 118 Wn.2d 451, 463, 824 P.2d 1207 (1992). In denying certification, the trial court accepted that common issues of law or fact existed as to the first three elements of a Washington CPA action. The trial court found lacking the last two elements, causation and injury.

Causation

A Washington CPA action requires a showing that plaintiff was injured in his or her "business or property." RCW 19.86.090; *Hangman Ridge*, 105 Wn.2d at 792. "A causal link is required between the unfair or deceptive acts and the injury suffered by plaintiff." *Hangman Ridge*, 105 Wn.2d at 793. A plaintiff establishes causation if he shows the trier of fact that he relied upon a misrepresentation of fact. *Nuttall v. Dowell*, 31 Wn. App. 98, 111, 639 P.2d 832 (1982). The causation requirement is met where the defendant "induced" the plaintiff to act or refrain from acting. *Anhold v. Daniels*, 94 Wn.2d 40, 46, 614 P.2d 184 (1980); *Hangman Ridge*, 105 Wn.2d at 793.

■ ■ Injury and causation are established if the plaintiff loses money because of unlawful conduct. *Edmonds v. John L. Scott Real Estate*, 87 Wn. App. 834, 847, 942 P.2d 1072 (1997); *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990).

Each plaintiff signed a cruise contract with Holland America. Paragraph three of the contract provided the following:

**Additions to Fare/Port Charges/Taxes:** . . .

(b) Similarly, the amount specified in the Holland America Line brochure for port charges and taxes was based upon the amount of governmental charges, taxes and fees in existence at the time of printing. If increases have occurred or should hereafter occur in those amounts, Owner and HALW reserve the right to require you to pay the additional amounts as a condition of taking the Cruise or Cruisetour. No right of cancellation exists under these circumstances.

The named plaintiffs' deposition testimony indicates that they had limited knowledge of the port charges and taxes provision in the cruise contract. Belle Masin did not recall any discussions regarding port charges and taxes. Francine Picket could not recall reading paragraph three of the cruise contract. Brian Cohen did not recall whether he read paragraph three of the cruise contract before or after the cruise. Holland America asserts that the plaintiffs cannot establish that they were "induced" by a provision that the plaintiffs were not even aware of at the time of contracting. Therefore, no consumer protection claim is possible.

As to injury to the plaintiff class, discovery[3] established Holland America collected millions of dollars per year in revenue for port charges and taxes, in excess of what it actually paid in port charges and taxes. The discovery established Holland America included a category of "[o]ther HALW [c]osts" and a markup margin on top of the actual or projected port fees and taxes. Passengers were not told that "[o]ther HALW [c]osts" nor any corporate markup or contingency was being collected from them. Passengers were told only that they must pay the fees as a condition of taking the cruise, and that they could not cancel their cruise.

In a comparable case involving the Florida consumer protection statute, *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699 (Fla. Dist. Ct. App. 2000), the Florida Court of Appeals reversed the trial court's denial of class certifica-

---

[3] The actual discovery documents have been filed under seal to protect the competitive interests of Holland America.

tion. In *Latman*, plaintiffs asserted that Costa Cruise Lines charged "port charges," but kept a portion of the charge for corporate purposes. Costa Cruise Lines argued that a class action was improper where the consumer protection statute requires a showing of reliance and damages that necessarily entails case-by-case adjudication. *Latman*, 758 So. 2d at 701-02. The court held that "[r]eliance and damages are sufficiently shown by the fact that the passenger parted with money for what should have been a 'pass-through' port charge, but the cruise line kept the money." *Latman*, 758 So. 2d at 703.[4] The court analogized Costa Cruise Lines port charge to a company systematically overcharging its customers on sales tax, and keeping a portion of the sales tax charge for itself. Even though consumers may not have paid attention to the sales tax or willingly agreed to pay the purchase price, including the sales tax, the claim is actionable under the Florida consumer protection statute. *Latman*, 758 So. 2d at 703.

Bebchick cites several class action cases that analyze the reliance issue. In *Amato v. General Motors Corp.*, 11 Ohio App. 3d 124, 463 N.E.2d 625 (1982), plaintiffs brought a class action against General Motors (GM) claiming GM wrongfully substituted Oldsmobile manufactured engines with Chevrolet manufactured engines, where dealers represented Oldsmobile automobiles were equipped with the former. The Ohio Court of Appeals reviewed the trial court's class certification of plaintiffs' claim under the Ohio Consumer Sales Practices Act (OCSPA). The court held that a cause of action under the OCSPA does not require individual proof that plaintiffs were exposed to the misrepresentation, because such a requirement "would result in the utter negation of the fundamental objectives of class-action procedure. . . ." *Amato*, 463 N.E.2d at 628. Further, in affirming the trial court's certification of the class action, the court held that "proof of reliance may be sufficiently

---

[4] *See also Renaissance Cruises, Inc. v. Glassman*, 738 So. 2d 436 (Fla. Dist. Ct. App. 1999), affirming the trial court's class certification of plaintiffs' action for deceptive trade practices.

established by inference or presumption from circumstantial evidence to warrant submission to a jury without direct testimony from each member of the class." *Amato*, 463 N.E.2d at 629. The *Amato* court relied on *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814, 484 P.2d 964, 94 Cal. Rptr. 796 (1971), where the court held that "'if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class.'" *Amato*, 463 N.E.2d at 629.

In *Dix v. American Bankers Life Assurance Co.*, 429 Mich. 410, 415 N.W.2d 206 (1987), the Michigan Supreme Court reversed the trial court's dismissal of a class action based on the state's Consumer Protection Act. The court held that "members of a class proceeding under the Consumer Protection Act need not individually prove reliance on the alleged misrepresentations." *Dix*, 415 N.W.2d at 209. The court reasoned that the plaintiffs' claims under the Consumer Protection Act would be manageable in a class action because the alleged misrepresentations "are all substantially similar and are all part of a common scheme . . . ." *Dix*, 415 N.W.2d at 210.

Holland America relies on cases where class certification was denied for actions based on deceptive trade practices. In *Ex parte Exxon Corp.*, 725 So. 2d 930 (Ala. 1998), the Alabama Supreme Court granted Exxon's mandamus petition challenging the trial court's class certification of plaintiffs' claim regarding allegedly deceptive marketing practices. But in *Exxon*, the court held that the state consumer protection statute specifically prohibited class actions based on deceptive trade practices.[5] *Exxon*, 725 So. 2d at 933. Here, the Washington CPA statute does not specifically prohibit class action suits. In *Darms v. McCulloch Oil Corp.*, 720 F.2d 490, 493 (8th Cir. 1983), a case involving various allegations of fraud in the sale of land, the court affirmed denial of class certification, finding that a class

---

[5] Alabama law provided that "'[a] consumer or other person bringing an action under this chapter may not bring an action on behalf of a class . . . .'" *Exxon*, 725 So. 2d at 933 n.4.

action would not be superior to other available methods of adjudication as required under CR 23(b)(3). The court stated that the purchase of land by each plaintiff "was a separate transaction, and that totally separate oral and written representations by the defendants allegedly caused the injuries to each plaintiff." *Darms*, 720 F.2d at 493. Similarly, in *Shivangi v. Dean Witter Reynolds, Inc.*, 107 F.R.D. 313, 325 (S.D. Miss. 1985), the court affirmed a denial of class certification where securities brokers and executives made individual and distinct representations to the plaintiff class.

■■■ Holland America relies on authority where there is no common set of operative facts that has established liability. Here, purchaser-plaintiffs' payment of "port charges" is part of a common factual scheme. Purchase of a cruise ticket is the single event that occasioned each plaintiff's injury. Causation inheres in the fact that the plaintiffs purchased cruise tickets. Holland America overstated and retained a portion of the funds it had misrepresented were the amount of pass-through charges for port charges and taxes. We need not engage in an inquiry whether each plaintiff would have purchased a cruise ticket had they known about the port charges and taxes. We simply hold that Holland America cannot impose on passengers fees, which are not port charges and taxes, and yet call them government charges, taxes, and fees—pass-through charges—when they are not. The Washington CPA should be liberally construed to protect the public and foster honest competition. *Griffith v. Centex Real Estate Corp.*, 93 Wn. App. 202, 213, 969 P.2d 486 (1998); RCW 19.86.920. We find that the cases cited by appellant are persuasive. We hold that common issues as to causation clearly predominate over individual ones. Any other interpretation would effectively undermine class actions based on the Washington CPA.

Damages

■■■ We also disagree with the trial court's finding that individual issues of injury predominate over common ques-

tions. Individual questions of damages are no barrier to class certification if "computing individual damages will be virtually a mechanical task," *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975), or "capable of mathematical or formula calculation." *Windham v. American Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977), *cert. denied*, 435 U.S. 968 (1978) (quoting Practical Law Institute, *Current Problems in Federal Civil Practice*, 491 (1975)). Cruise ticket sales are standardized transactions conducted by travel agencies throughout the world. The choices available to ticket buyers are limited. Purchasing cruise tickets does not involve a unique activity that interferes with determining damages. Proving, calculating, and distributing damages is a clerical task that a master may ascertain by reviewing a roster of class plaintiffs. The amount of port charges or taxes paid by each plaintiff can be determined by simple arithmetic. Further, it appears the amount of excess charges may be available on a per cruise basis from already existing Holland America records. Nothing in the statute's provision for damages requires individual determinations. In this class action, the plaintiffs' damages do not constitute individual issues that predominate over common questions.

Summary

▇▇▇ Whether a particular action gives rise to a violation under the Washington CPA is reviewable as a question of law. *Griffith*, 93 Wn. App. at 214; *Leingang v. Pierce County Med. Bureau*, 131 Wn.2d 133, 150, 930 P.2d 288 (1997). The trial court erred in finding that individual issues predominate over common issues as to causation and damages. In light of these errors of law, the trial court abused its discretion in denying certification of the plaintiffs' Washington CPA claim.

Reasonableness of the Settlement

▇▇▇▇ A proposed class settlement may be approved if the trial court determines it is "fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). The trial court's approval of a settlement may be disturbed only upon a clear showing of abuse of

discretion. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Bebchick challenges the fairness and reasonableness of the settlement on grounds that the trial court failed to consider evidence on the value of the settlement, and failed to provide fundamental due process by denying the opportunity to call and examine witnesses during the fairness hearing. Holland America contends that the trial court properly exercised its discretion by considering factors such as the strength of the plaintiffs' case and the amount of the settlement offer. Holland America further argues that affirming the settlement renders the issue of whether the trial court properly denied the class certification moot.

■ The trial court considers various factors in deciding the fairness of a class action settlement agreement. The court should consider (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in the settlement; (5) the stage of the proceedings; and (6) the reaction of the class members to the proposed settlement. *Class Plaintiffs*, 955 F.2d at 1291; *Officers for Justice v. Civil Serv. Comm'n, FTC*, 688 F.2d 615, 625 (9th Cir. 1982).

After balancing these factors, the trial court found the settlement agreement fair and reasonable. However, the trial court's analysis was based upon its previous denial of a certifiable class for the purchaser-plaintiffs' Washington CPA claims. We have reversed as a matter of law or as an abuse of discretion each of the trial court's reasons for denial of class certification. This clears the way for certification of the class action by the trial court on remand. This dramatically changes the facts and will undoubtedly change the analysis of each factor by both the court and the plaintiffs' class. Accordingly, we vacate the trial court approval of the proposed settlement.

In sum, we reverse the trial court's denial of class certification of plaintiffs' Washington CPA claims. We remand to the trial court for further proceedings consistent with this opinion.

Attorney Fees

■ If the appellant prevails on the consumer protection claims on remand, having prevailed in this appeal, the trial court shall award reasonable attorney fees and costs incurred in this appeal.

Reverse and remand.

WEBSTER and ELLINGTON, JJ., concur.

Review granted at 143 Wn.2d 1001 (2001).